# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00236-CV

**Miriam Hoelscher, Appellant**

**v.**

**San Angelo Community Medical Center; Kelli Everett, R.N.; Steve Reyes, CVT; and John/Jane Doe, Appellees**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT NO. D-02-0344-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Miriam Hoelscher appeals from the dismissal of her medical malpractice claim against appellees San Angelo Community Medical Center; Kelli Everett, R.N.; Steve Reyes, CVT; and John/Jane Doe. Hoelscher alleges that appellees injured her rotator cuff while transferring her between a gurney and a procedure table. Based on appellees' complaint that Hoelscher's expert's report did not meet statutory requirements, the district court dismissed the cause. *See* former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01 ("Section 13.01").[1] We will affirm the judgment of the trial court.

---

[1] Act of May 18, 1993, 73d Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347, 2347-49, *amended by* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985-87, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 205, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2004)). The previous version applies to this case.

# BACKGROUND

A medical team including Everett, Reyes, and others performed a cardiac catheterization on Hoelscher at the San Angelo Community Medical Center. Hoelscher alleges that the individual appellees failed to use proper mechanics and lifting techniques when transferring her between the gurney and the procedure table, which caused the rotator cuff in her right shoulder to tear; she asserts that the hospital was vicariously liable for the individuals' acts. She alleges that her injury required surgery, caused her incapacitating pain, and interfered with her career and rehabilitation.

Hoelscher filed suit on March 18, 2002. Her treating orthopedic surgeon, Dr. Marshall Frumin, supplied the required expert's report. *See* section 13.01(r)(6). He filed a report on July 5, 2002 and a supplemental report on July 19, 2002. In the initial report, Frumin recounted the treatment Hoelscher received. He included comments contained within Hoelscher's medical records made by treating physicians who believed Hoelscher was injured during the transfer between the gurney and the procedure table. Frumin quotes the discharge summary from her admitting physician, Dr. Darrell Herrington, who explained that Hoelscher "experienced short pain in her [right][2] shoulder as she was lifted unto the table for the angiogram. . . . [S]tudies were obtained including an arthogram which revealed degenerative changes of the AC joint and a tear of the rotator cuff." Frumin's report reveals that Dr. Robert Alexander conducted tests on Hoelscher's right shoulder at Herrington's request and confirmed the right shoulder rotator cuff tear. Frumin found

---

[2] Herrington apparently wrote that the injury was to the left shoulder. Frumin opined that the reference to the left shoulder was a mistake because all of the charts Frumin reviewed discuss the right shoulder.

the injury substantiated by the analysis of an arthogram performed within days after the catheterization; a radiologist reported that, following mild active motion, a large tear of the rotator cuff was apparent. Frumin states that he reviewed voluminous records from which he determined that both Dr. Herrington and Dr. Alexander believed the patient had incurred the injury from being lifted onto the table for her cardiac procedure and that the patient only began complaining of pain in the shoulder and right arm following the coronary procedure. Frumin then concluded that he concurred with Dr. Herrington and Dr. Alexander that the rotator cuff injury occurred during the hospitalization for the coronary procedure when Hoelscher was transferred from the gurney to the procedure table.

Frumin did not make any specific statement regarding the standard of care in the original report. However, in his first supplemental report filed on July 19, he stated that he was familiar with the standard of care in transferring patients from a stretcher to a treatment table and that if a patient were transferred in a proper manner no harm would be caused. In Frumin's opinion, it was the manner in which Hoelscher was transferred from the gurney to the treatment table that caused the injury to her right shoulder.

No objections or other intimation that these reports were inadequate appear in the record until after the period for filing expert reports had expired.[3] On October 25, 2002, appellees

---

[3] Section 13.01 was silent regarding whether defendants had to object to flaws in the expert report during the period for filing. *See generally* Section 13.01. Interpreting section 13.01, the supreme court held that defendants could, as appellees in this case did, wait until the time for filing a report lapsed before alleging deficiencies in the report and then demand and obtain dismissal. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). However, when amending and codifying Section 13.01, the legislature clarified that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." Tex.

moved to dismiss the suit. They contended that Frumin's reports failed to identify the applicable standard of care, state how appellees breached the standard of care, or adequately address causation.

On December 12, 2003, Hoelscher filed a motion for extension of time to file an expert report and filed a second supplemental report from Dr. Frumin dated November 23, 2002 ("the November report"). Appellees responded that the November report should not be considered because it was untimely filed more than 180 days after the suit was filed and reiterated their motion to dismiss.

The district court granted the motion to dismiss the medical malpractice claims "pursuant to the provisions of Article 4590i, § 13, Texas Revised Civil Statutes" without stating a more specific basis. The court did not expressly rule on either the motion to extend time to file the report or the motion to strike the report. However, the dismissal indicates that the court did not consider the November report, which was clearly filed outside the 180-day period for filing such reports. *See* Section 13.01(d). Any extension of that period would have to be granted by the district court or effected by written, signed agreement of the parties filed with the district court. Section 13.01(f)-(h). Because no such extension or agreement is in the record, the period was not extended and the November report apparently was not considered.

## DISCUSSION

We apply an abuse of discretion standard when reviewing the dismissal of a medical malpractice claim based on the inadequacy of the plaintiff's medical expert's report. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v.*

---

Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2004-05).

4

*Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In reviewing discretionary actions, a court of appeals may not substitute its own judgment for the trial court's judgment. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

If medical malpractice plaintiffs fail to file an expert report with curriculum vitae, the trial court imposes sanctions by dismissing their claims with prejudice. Section 13.01(d); *Palacios*, 46 S.W.3d at 877. The expert report must provide a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the damages claimed. Section 13.01(r)(6); *Wright*, 79 S.W.3d at 52. A court shall grant a motion to dismiss challenging the adequacy of an expert report only if it appears to the court, after a hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in 13.01(r)(6). Section 13.01(l); *Wright*, 79 S.W.3d at 51-52.

To constitute a good faith effort to comply with the statutory definition, the report must provide enough information to serve the following two purposes: it must inform the defendant of the specific conduct the plaintiff has called into question, and it must provide a basis for the trial court to conclude that the claims have merit. *Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 879). The trial court may look no further than the four corners of the document. *Id.* The report must include the expert's opinion on each of the three statutorily required elements: standard of care, breach, and causation. *Id.* The report may not be conclusory; it must explain the basis of the expert's statements and link his conclusions to the facts. *Id.*

Here Hoelscher must show that the court acted unreasonably and without guiding principles when it determined that her expert's report did not constitute a good faith effort to provide the necessary elements, standard of care, breach, and causation. *Id*. This standard of care requires sufficient explanation to notify the defendant of the specific conduct complained of and allow the court to assess the merits of the claim; it is not enough for the expert to state that she or he knows the standard of care and that it was breached. *Palacios*, 46 S.W.3d at 879-80. The supreme court held that the report in *Palacios* was deficient because the expert failed to relate the injurious event—a hospital patient's fall from bed despite restraints—to the breach of a particular standard of care; the expert failed to state whether the standard of care required closer supervision, more secure restraint, or something else entirely. *Id*. at 880. The court noted that the conclusion that, because properly restrained patients did not generally fall from their beds, the patient's fall and injuries showed that the hospital must have breached its standard of care was not helpful because res ipsa loquitur does not apply in medical malpractice cases. *Id*.

Although Frumin's report states that he knew the standard of care and that it was breached, it is not clear from his report what specific conduct is complained of. Frumin's report focuses on the transfer of Hoelscher between the gurney and procedure table. He states that whatever method appellants use to transfer a patient, transfers must be performed in a manner that does not harm the patient's extremities or other body parts. He opines that Hoelscher's injury indicates that appellees must have breached that responsibility by failing to use proper mechanics and lifting techniques. As in *Palacios*, this report fails to explain the standard of care or how that standard was breached; it does not indicate what improper method was used, nor what the doctors or technicians should have done differently. Essentially, Frumin opines that the standard of care

6

requires that the patient not be injured. This is not sufficient to notify the defendant of the specific conduct complained of and to allow the court to assess the merits of the claim. *Palacios*, 46 S.W.3d at 879. Section 13.01 expert reports cannot infer breach of a standard of care from the fact that an injury exists that normally should not. *Id*. at 880.

Because the report lacks information about the specific conduct complained of and fails to specify a standard of care, the trial court could reasonably have determined that the report was conclusory and therefore insufficient. *Wright*, 79 S.W.3d at 53; *Palacios*, 46 S.W.3d at 879. Given these facts, we cannot say the court acted unreasonably and without reference to guiding principles when it concluded that the report did not represent a good-faith effort to meet the requirements of Section 13.01. *See Wright*, 79 S.W.3d at 52-54. Therefore, the court correctly dismissed the plaintiff's claims. Section 13.01(l).

## CONCLUSION

Because the trial court did not abuse its discretion in determining that the expert report did not represent a good-faith effort to meet the requirements of Section 13.01, we affirm the judgment of the trial court dismissing Hoelscher's claims.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Kidd and Puryear: Opinion by Justice Puryear;
    Dissenting Opinion by Justice Kidd

Affirmed

Filed: December 2, 2004

7