TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00236-CV






Miriam Hoelscher, Appellant


v.


San Angelo Community Medical Center; Kelli Everett, R.N.; Steve Reyes, CVT;

and John/Jane Doe, Appellees







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT

NO. D-02-0344-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Miriam Hoelscher appeals from the dismissal of her medical malpractice claim
against appellees San Angelo Community Medical Center; Kelli Everett, R.N.; Steve Reyes, CVT;
and John/Jane Doe. Hoelscher alleges that appellees injured her rotator cuff while transferring her
between a gurney and a procedure table. Based on appellees' complaint that Hoelscher's expert's
report did not meet statutory requirements, the district court dismissed the cause. See former Tex.
Rev. Civ. Stat. Ann. art. 4590i, § 13.01 ("Section 13.01"). (1) We will affirm the judgment of the trial
court.

BACKGROUND


 A medical team including Everett, Reyes, and others performed a cardiac
catheterization on Hoelscher at the San Angelo Community Medical Center. Hoelscher alleges that 
the individual appellees failed to use proper mechanics and lifting techniques when transferring her
between the gurney and the procedure table, which caused the rotator cuff in her right shoulder to
tear; she asserts that the hospital was vicariously liable for the individuals' acts. She alleges that her
injury required surgery, caused her incapacitating pain, and interfered with her career and
rehabilitation.

 Hoelscher filed suit on March 18, 2002. Her treating orthopedic surgeon, Dr.
Marshall Frumin, supplied the required expert's report. See section 13.01(r)(6). He filed a report
on July 5, 2002 and a supplemental report on July 19, 2002. In the initial report, Frumin recounted
the treatment Hoelscher received. He included comments contained within Hoelscher's medical
records made by treating physicians who believed Hoelscher was injured during the transfer between
the gurney and the procedure table. Frumin quotes the discharge summary from her admitting
physician, Dr. Darrell Herrington, who explained that Hoelscher "experienced short pain in her
[right] (2) shoulder as she was lifted unto the table for the angiogram. . . . [S]tudies were obtained
including an arthogram which revealed degenerative changes of the AC joint and a tear of the rotator
cuff." Frumin's report reveals that Dr. Robert Alexander conducted tests on Hoelscher's right
shoulder at Herrington's request and confirmed the right shoulder rotator cuff tear. Frumin found
the injury substantiated by the analysis of an arthogram performed within days after the
catheterization; a radiologist reported that, following mild active motion, a large tear of the rotator
cuff was apparent. Frumin states that he reviewed voluminous records from which he determined
that both Dr. Herrington and Dr. Alexander believed the patient had incurred the injury from being
lifted onto the table for her cardiac procedure and that the patient only began complaining of pain
in the shoulder and right arm following the coronary procedure. Frumin then concluded that he
concurred with Dr. Herrington and Dr. Alexander that the rotator cuff injury occurred during the
hospitalization for the coronary procedure when Hoelscher was transferred from the gurney to the
procedure table.

 Frumin did not make any specific statement regarding the standard of care in the
original report. However, in his first supplemental report filed on July 19, he stated that he was
familiar with the standard of care in transferring patients from a stretcher to a treatment table and that
if a patient were transferred in a proper manner no harm would be caused. In Frumin's opinion, it
was the manner in which Hoelscher was transferred from the gurney to the treatment table that
caused the injury to her right shoulder.

 No objections or other intimation that these reports were inadequate appear in the
record until after the period for filing expert reports had expired. (3) On October 25, 2002, appellees
moved to dismiss the suit. They contended that Frumin's reports failed to identify the applicable
standard of care, state how appellees breached the standard of care, or adequately address causation.

 On December 12, 2003, Hoelscher filed a motion for extension of time to file an
expert report and filed a second supplemental report from Dr. Frumin dated November 23, 2002
("the November report"). Appellees responded that the November report should not be considered
because it was untimely filed more than 180 days after the suit was filed and reiterated their motion
to dismiss.

 The district court granted the motion to dismiss the medical malpractice claims
"pursuant to the provisions of Article 4590i, § 13, Texas Revised Civil Statutes" without stating a
more specific basis. The court did not expressly rule on either the motion to extend time to file the
report or the motion to strike the report. However, the dismissal indicates that the court did not
consider the November report, which was clearly filed outside the 180-day period for filing such
reports. See Section 13.01(d). Any extension of that period would have to be granted by the district
court or effected by written, signed agreement of the parties filed with the district court. Section
13.01(f)-(h). Because no such extension or agreement is in the record, the period was not extended
and the November report apparently was not considered.


DISCUSSION


 We apply an abuse of discretion standard when reviewing the dismissal of a medical
malpractice claim based on the inadequacy of the plaintiff's medical expert's report. Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002); American Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner without reference to any guiding rules or principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). In reviewing discretionary actions, a court
of appeals may not substitute its own judgment for the trial court's judgment. See Walker v.
Gutierrez, 111 S.W.3d 56, 63 (Tex. 2003).

 If medical malpractice plaintiffs fail to file an expert report with curriculum vitae, the
trial court imposes sanctions by dismissing their claims with prejudice. Section 13.01(d); Palacios,
46 S.W.3d at 877. The expert report must provide a fair summary of the expert's opinions as of the
date of the report regarding applicable standards of care, the manner in which the care rendered by
the physician or health care provider failed to meet the standards, and the causal relationship between
that failure and the damages claimed. Section 13.01(r)(6); Wright, 79 S.W.3d at 52. A court shall
grant a motion to dismiss challenging the adequacy of an expert report only if it appears to the court,
after a hearing, that the report does not represent a good faith effort to comply with the definition of
an expert report in 13.01(r)(6). Section 13.01(l); Wright, 79 S.W.3d at 51-52.

 To constitute a good faith effort to comply with the statutory definition, the report
must provide enough information to serve the following two purposes: it must inform the defendant
of the specific conduct the plaintiff has called into question, and it must provide a basis for the trial
court to conclude that the claims have merit. Wright, 79 S.W.3d at 52 (citing Palacios, 46 S.W.3d
at 879). The trial court may look no further than the four corners of the document. Id. The report
must include the expert's opinion on each of the three statutorily required elements: standard of care,
breach, and causation. Id. The report may not be conclusory; it must explain the basis of the
expert's statements and link his conclusions to the facts. Id. 

 Here Hoelscher must show that the court acted unreasonably and without guiding
principles when it determined that her expert's report did not constitute a good faith effort to provide
the necessary elements, standard of care, breach, and causation. Id. This standard of care requires
sufficient explanation to notify the defendant of the specific conduct complained of and allow the
court to assess the merits of the claim; it is not enough for the expert to state that she or he knows
the standard of care and that it was breached. Palacios, 46 S.W.3d at 879-80. The supreme court
held that the report in Palacios was deficient because the expert failed to relate the injurious
event--a hospital patient's fall from bed despite restraints--to the breach of a particular standard
of care; the expert failed to state whether the standard of care required closer supervision, more
secure restraint, or something else entirely. Id. at 880. The court noted that the conclusion that,
because properly restrained patients did not generally fall from their beds, the patient's fall and
injuries showed that the hospital must have breached its standard of care was not helpful because res
ipsa loquitur does not apply in medical malpractice cases. Id.

 Although Frumin's report states that he knew the standard of care and that it was
breached, it is not clear from his report what specific conduct is complained of. Frumin's report
focuses on the transfer of Hoelscher between the gurney and procedure table. He states that
whatever method appellants use to transfer a patient, transfers must be performed in a manner that
does not harm the patient's extremities or other body parts. He opines that Hoelscher's injury
indicates that appellees must have breached that responsibility by failing to use proper mechanics
and lifting techniques. As in Palacios, this report fails to explain the standard of care or how that
standard was breached; it does not indicate what improper method was used, nor what the doctors
or technicians should have done differently. Essentially, Frumin opines that the standard of care
requires that the patient not be injured. This is not sufficient to notify the defendant of the specific
conduct complained of and to allow the court to assess the merits of the claim. Palacios, 46 S.W.3d
at 879. Section 13.01 expert reports cannot infer breach of a standard of care from the fact that an
injury exists that normally should not. Id. at 880.

 Because the report lacks information about the specific conduct complained of and
fails to specify a standard of care, the trial court could reasonably have determined that the report
was conclusory and therefore insufficient. Wright, 79 S.W.3d at 53; Palacios, 46 S.W.3d at 879. 
Given these facts, we cannot say the court acted unreasonably and without reference to guiding
principles when it concluded that the report did not represent a good-faith effort to meet the
requirements of Section 13.01. See Wright, 79 S.W.3d at 52-54. Therefore, the court correctly
dismissed the plaintiff's claims. Section 13.01(l).


CONCLUSION


 Because the trial court did not abuse its discretion in determining that the expert
report did not represent a good-faith effort to meet the requirements of Section 13.01, we affirm the
judgment of the trial court dismissing Hoelscher's claims.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Kidd and Puryear: Opinion by Justice Puryear;

 Dissenting Opinion by Justice Kidd

Affirmed

Filed: December 2, 2004
1. Act of May 18, 1993, 73d Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347, 2347-49,
amended by Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985-87,
repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 205, § 10.09, 2003 Tex. Gen. Laws 847, 884
(current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2004)). The previous
version applies to this case.
2. Herrington apparently wrote that the injury was to the left shoulder. Frumin opined that
the reference to the left shoulder was a mistake because all of the charts Frumin reviewed discuss
the right shoulder.
3. Section 13.01 was silent regarding whether defendants had to object to flaws in the expert
report during the period for filing. See generally Section 13.01. Interpreting section 13.01, the
supreme court held that defendants could, as appellees in this case did, wait until the time for filing
a report lapsed before alleging deficiencies in the report and then demand and obtain dismissal. 
Walker v. Gutierrez, 111 S.W.3d 56, 66 (Tex. 2003). However, when amending and codifying
Section 13.01, the legislature clarified that "[e]ach defendant physician or health care provider whose
conduct is implicated in a report must file and serve any objection to the sufficiency of the report not
later than the 21st day after the date it was served, failing which all objections are waived." Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2004-05).