**BOWIE MEMORIAL HOSPITAL a/k/a Bowie Hospital District d/b/a Bowie Hospital District Authority d/b/a Bowie Memorial Hospital, Petitioner,**

v.

**Barbara WRIGHT and P.L. Wright, Respondents.**

No. 01–0814.

Supreme Court of Texas.

June 13, 2002.

69. 68 F.3d 429 (11th Cir.1995).

70. *Gianelli*, 146 F.3d at 1312.

71. *Al–Harbi*, 85 F.3d at 683.

**50**

Gregory J. Lensing, Charles T. Frazier, Jr. Cowles & Thompson, Dallas, Susan Irene Nelson, Dallas, for Petitioner.

Britta Jean Gordon, Michael Kevin Queenan, Queenan Law Firm, DeSoto, for Respondents.

PER CURIAM.

This case involves the Medical Liability and Insurance Improvement Act's ("the Act") expert-report requirements. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01. The trial court dismissed the plaintiffs' medical malpractice claims after it determined that their expert report did not satisfy the Act's requirements. The court of appeals concluded that the trial court abused its discretion when it dismissed the plaintiffs' claims, because the expert report represented a good-faith effort to comply with the Act. 48 S.W.3d 443, 448. We disagree. Accordingly, we reverse the court of appeals' judgment and dismiss with prejudice the Wrights' claims against Bowie Memorial Hospital.

Barbara Wright was admitted to Bowie after she sustained injuries in a car accident. While at Bowie, Michael Layne, a physician's assistant that Bowie employed, x-rayed Barbara's right knee and foot and diagnosed her with a fractured patella. However, Layne allegedly misplaced or misread the foot x-ray and, therefore, did not discover that Barbara had also fractured her right foot in the accident.

Shortly after Barbara was admitted to Bowie, Dr. Hodde, Layne's supervisor, recommended that Bowie refer her to an orthopedic surgeon. Barbara was immediately referred to an orthopedic surgeon and transferred to another hospital. Her accompanying medical report, which Layne prepared, only indicated that Barbara had a fractured knee.

Nearly a month after the accident, Barbara's orthopedic surgeon discovered Barbara's fractured foot. By that time, the surgeon had already operated on Barbara's knee. The Wrights claim that the surgeon could have operated on Barbara's foot at the same time if he had known about the injury. Instead, Barbara had two additional surgeries over the next ten months.

Barbara and her husband sued Bowie, Layne, and Dr. Hodde for medical malpractice. The Wrights also sued the orthopedic surgeon, another treating doctor, and three medical clinics not associated with Bowie. The Wrights' allegations pertinent here are that Bowie personnel did not: diagnose Barbara's foot fracture; protect her foot; review diagnostic tests ordered and administered at the hospital; or properly supervise Layne.

The Wrights filed an expert medical report about Bowie's, Dr. Hodde's, and another doctor's alleged negligence. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01(d). The expert report states, in part:

I have reviewed the material you sent me on the above case. I believe that the hospital fell below the appropriate standard of care in not having a defined mechanism in place whereby x-rays taken in the E.R. are read by a physician specialized in interpreting the films in a timely manner (i.e., less than 24 hrs). X-rays taken in the E.R. need to have re-reads performed within 24 hrs and if

there is a discrepency [sic] in the x-ray readings a system should be in place to inform the patient of this. There did not appear to be any procedure that the hospital has for tracking x-rays. The hospital also doesn't seem to have a system of orienting health care professionals working in the E.R. nor any form of Q/A for P.A.'s staffing the E.R. There didn't appear to be any organized system or protocols for P.A. supervision in the E.R.

. . .

I do believe that it is reasonable to believe that if the x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then Wright would have had the possibility of a better outcome.

Bowie moved to dismiss the Wrights' claims, alleging that the expert report "fails to establish how any act or omission of employees of Bowie Memorial Hospital caused or contributed to Ms. Wright's injuries." Therefore, Bowie argued, the report does not satisfy the Act's requirements.

The trial court held two hearings to determine if the report represents a good-faith effort to meet the Act's requirements. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01(*l*). At the first hearing, the trial court asked about the causal relationship between Bowie's conduct and Barbara's injury. The Wrights explained that if Bowie had diagnosed Barbara's fractured foot earlier, then she "probably would have had a better outcome." They also conceded that the orthopedic specialist Barbara saw immediately after leaving Bowie "had an independent duty to verify" Bowie's medical report. Nevertheless, the Wrights claimed that, if Bowie's report had indicated that Barbara had a broken foot, it would have been "much easier" for the orthopedic doctor to make a proper

diagnosis. After the second hearing, the trial court granted Bowie's motion to dismiss. The record indicates that the trial court did not believe the Wrights' claims against Bowie, "the people who transferred [Barbara]," had merit, given that the orthopedic surgeon "could have done his own work."

The court of appeals reversed and remanded, holding that the trial court abused its discretion when it dismissed the Wrights' claims against Bowie. 48 S.W.3d at 448. The court concluded that the report inadequately summarizes the causal relationship between Bowie's alleged negligence and Barbara's injury. However, it determined that the report represents a good-faith effort to comply with the Act, because it raises the possibility that, but for Bowie's breach, Barbara "would have had a better outcome." 48 S.W.3d at 447.

■ Medical-malpractice plaintiffs must provide each defendant physician and health-care provider an expert report with the expert's curriculum vitae, or they must voluntarily nonsuit the action. *See* TEX. REV.CIV. STAT. art. 4590i, § 13.01(d); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001). The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX.REV.CIV. STAT. art. 4590i, § 13.01(r)(6). If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion "*only if* it appears to the court, after hearing, that the report does not represent a *good faith effort* to comply with the definition of an expert report in Subsection (r)(6) of this

section." TEX.REV.CIV. STAT. art. 4590i, § 13.01(*l*) (emphasis added).

█ We recently discussed the Act's expert-report requirement for medical-malpractice cases. *See Palacios*, 46 S.W.3d at 877–80. In *Palacios*, we explained that, when considering a motion to dismiss under section 13.01(*l*), "[t]he issue for the trial court is whether 'the report' represents a good-faith effort to comply with the statutory definition of an expert report." *Palacios*, 46 S.W.3d at 878. To constitute a "good-faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879.

█ The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Palacios*, 46 S.W.3d at 878. The report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three elements that the Act identifies: standard of care, breach, and causal relationship. *Palacios*, 46 S.W.3d at 878. A report cannot merely state the expert's conclusions about these elements. *Palacios*, 46 S.W.3d at 879. "[R]ather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999).

█ We review a trial court's order dismissing a claim for failure to comply with section 13.01(d)'s expert-report requirements under an abuse-of-discretion standard. *Palacios*, 46 S.W.3d at 878. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment. *See Flores v. Fourth Ct. of Appeals*, 777 S.W.2d 38, 41 (Tex.1989).

Here, the parties do not dispute that the expert report fairly summarizes the alleged standard of care, because it states that a hospital should have established procedures to read and interpret x-rays in a timely manner and to inform patients about the results. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01(r)(6). Also, the parties do not dispute that the report fairly summarizes how Bowie allegedly breached the standard of care, because the report states that Bowie did not have a procedure to track x-rays. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01(r)(6). Consequently, the parties only contest whether the report constitutes a "good-faith effort" to fairly summarize the causal relationship between Bowie's alleged breach and Barbara's injury. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01(r)(6); *Palacios*, 46 S.W.3d at 879.

Contrary to the court of appeals' conclusion, it is not enough that the expert report "provided insight" about the plaintiff's claims. *See* 48 S.W.3d at 447. Rather, to constitute a good-faith effort to establish the causal-relationship element, the expert report must fulfill *Palacios*'s two-part test. *See Palacios*, 46 S.W.3d at 879. Thus, under the *Palacios* test, we must determine whether the trial court acted unreasonably and without reference to guiding principles when it dismissed the Wrights' claims against Bowie. *See Downer*, 701 S.W.2d at 241–42.

The Wrights primarily rely on one statement in the report to establish causation: "if the x-rays would have been correctly read and the appropriate medical person-

nel acted upon those findings then Wright would have had the possibility of a better outcome." In their brief to this Court, the Wrights contend that this statement "explains why Petitioners' damages were caused by Bowie Hospital's breach: if the proper medical personnel at Bowie had reviewed the x-rays, [Barbara] would have had a chance of diagnosis and treatment of her foot fracture."

Bowie responds that the report's statement about causation is conclusory, because it does not explain how Bowie's failing to correctly read or act upon the x-rays caused injury to Barbara. Moreover, Bowie asserts, the statement does not even identify the specific injuries Bowie's conduct allegedly caused.

In reviewing the report's adequacy, the court of appeals focused on "whether the report provides a basis to conclude that the claims have merit." 48 S.W.3d at 447 (citing *Palacios*, 46 S.W.3d at 878–79). Although the causation statement recognizes only the "possibility"—rather than the "reasonable medical probability"—that Barbara might have had a better outcome, the court of appeals concluded that the report's adequacy should not turn "solely upon the claimant's failure to use magical words like 'reasonable probability.'" 48 S.W.3d at 447. Accordingly, the court of appeals held that the report met the good-faith effort test, because it gave the trial court a basis to conclude that the Wrights' claims against Bowie have merit. 48 S.W.3d at 448.

We agree with the court of appeals' conclusion that a report's adequacy does not depend on whether the expert uses any particular "magical words." Nothing in the Act's plain language, or in *Palacios*, suggests that, for these purposes, an expert report must express the causal relationship in terms of "reasonable medical probability." However, we disagree with the court of appeals' conclusion that the trial court abused its discretion in dismissing the Wrights' claims against Bowie. We have held that the only information relevant to whether a report represents a good-faith effort to comply with the statutory requirements is the report itself. *Palacios*, 46 S.W.3d at 878. And, we have held that we review a trial court's decision about whether a report constitutes a good-faith effort to comply with the Act under an abuse-of-discretion standard. *Palacios*, 46 S.W.3d at 878.

After reviewing this report, we conclude that the trial court could have reasonably determined that the report does not represent a good-faith effort to summarize the causal relationship between Bowie's failure to meet the applicable standards of care and Barbara's injury. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01(r)(6); *Palacios*, 46 S.W.3d at 879. That is because the report simply opines that Barbara might have had "the possibility of a better outcome" without explaining how Bowie's conduct caused injury to Barbara. We cannot infer from this statement, as the Wrights ask us to, that Bowie's alleged breach precluded Barbara from obtaining a quicker diagnosis and treatment for her foot. Rather, the report must include the required information within its four corners. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01(r)(6); *Palacios*, 46 S.W.3d at 878. Because the report lacks information linking the expert's conclusion (that Barbara might have had a better outcome) to Bowie's alleged breach (that it did not correctly read and act upon the x-rays), the trial court could have reasonably determined that the report was conclusory. *See Palacios*, 46 S.W.3d at 880; *Earle*, 998 S.W.2d at 890. A conclusory report does not meet the Act's requirements, because it does not satisfy the *Palacios* test. *Palacios*, 46 S.W.3d at 879.

For these reasons, we hold that the trial court did not abuse its discretion when it concluded that the report did not represent a good-faith effort to meet the Act's requirements. Therefore, the trial court had no discretion but to dismiss the plaintiffs' claims against Bowie. *See* TEX.REV. CIV. STAT. art. 4590i, § 13.01(*l*); *Palacios,* 46 S.W.3d at 880. In reviewing the trial court's order, the court of appeals improperly substituted its own judgment for the trial court's judgment. *See Flores,* 777 S.W.2d at 41. Accordingly, we grant Bowie's petition for review. Without hearing oral argument, we reverse the court of appeals' judgment and dismiss with prejudice the Wrights' claims against Bowie. *See* TEX.R.APP. P. 59.1.