In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-00756-CV
____________

FLORENCE M. STROM, Appellant

V.

MEMORIAL HERMANN HOSPITAL SYSTEM D/B/A MEMORIAL HOSPITAL
SOUTHWEST AND MEMORIAL HOSPITAL SYSTEM, AND DR. HENRY
BLUM, INDIVIDUALLY AND D/B/A SUGAR LAND ORTHOPEDIC
ASSOCIATES, P.A., Appellees




On Appeal from the 164th District Court 
Harris County, Texas
Trial Court Cause No. 98-47318




DISSENTING OPINION
          In my opinion, the timely-filed expert report of Dr. Robert A. Callewart, M.D.,
represents a good faith effort to comply with the definition of an expert report in
Subsection (r)(6) of the Medical Liability and Insurance Improvemnet Act,


 and
therefore the trial court abused its discretion when it dismissed the plaintiff’s claims
with prejudice. Accordingly, I respectfully dissent.
          I note that this is not a case involving the failure to file an expert report, and
this is not a case involving the filing of a late expert report. Rather, this case
involves a timely-filed expert report. The issue is whether the defendants’ challenges
to the adequacy of the expert report should have been granted, resulting in the
dismissal of plaintiff’s case with prejudice.
          If a plaintiff timely files an expert report and the defendant moves to dismiss
because of the report’s inadequacy, the trial court must grant the motion “only if it
appears to the trial court, after hearing, that the report does not represent a good faith
effort to comply with the definition of an expert report in Subsection (r)(6) of this
section.” Tex. Rev. Civ. Stat. Ann. Art. 4590i, § 13.01(l) (Vernon Supp. 2003)
(emphasis added); Bowie Memorial Hosp. v. Wright, 79 S.W.3d 48, 51-52 (Tex.
2002). To constitute a “good-faith effort,” the report must provide enough information
to fulfill two purposes: (1) it must inform the defendant of the specific conduct the
plaintiff has called into question, and (2) it must provide a basis for the trial court to
conclude that the claims have merit. Bowie, 79 S.W.3d at 52. A Court reviews the
information contained within the four corners of the report to determine whether it 
constitutes a “good-faith effort” to provide a fair summary of the expert’s opinions
about the standard of care, breach, and causal connection between breach and injury. 
Id. Claims against the Hospital
          Dr. Callewart’s report reads, in relevant part:
          A. Injury
Based upon evaluation by MRI, x-ray, and a cervical myelogram
in August and September 1996, Dr. John Berry suggested a
cervical decompression bilaterally of C7-T1, and possibly re-explore C5-6 bilaterally. This surgery was performed on October
4, 1996, at the Memorial Hospital Southwest in Houston, Texas. 
This surgery resulted in the patient sustaining an acute traumatic
injury in the patient’s left knee probably associated with improper
positioning of padding of the knee/leg, the patient being
presumably in a sitting position. The patient suffered immediate
pain and swelling of the knee postoperatively, with difficulty
walking. 
 
                    On October 23, 1996, it is reported that the patient complains of
left knee pain and hobbling on the left knee, which is swollen,
with decreased range of motion and tenderness. A MRI of the left
knee on November 1, 1996, showed a horizontal tear through the
posterior horn of the medial meniscus, extending to the inferior
articular surface near the free edge, and a small inferior surface
tear of the medial meniscus at the junction of the posterior horn
and body segment, and a grade I medial collateral ligament sprain.
 

          B. Standard of Care
The knee injuries described in the MRI do not occur when the
customary and usual standards of care are exercised in the
positioning and strapping a patient on the operative table. 
However, the injuries can occur when the hospital’s operating
room personnel fail to take necessary precautions to pad and avoid
the placement of the leg/knee in an abnormal position by strapping
the patient to prevent movement during surgery.
 
C. Breach
 
It is my expert opinion, based upon a reasonable medical
probability, that the knee injuries suffered by the patient were due
to the failure of the operating room personnel to exercise ordinary
care, or negligence of the operating room personnel, in placing and
maintaining her position on the operating room table.
 
D. Causal Connection
 
The knee injuries described in the MRI do not occur when the
customary and usual standards of care are exercised in the
positioning and strapping a patient on the operative table. 
However, the injuries can occur when the hospital’s operating
room personnel fail to take necessary precautions to pad and avoid
the placement of the leg/knee in an abnormal position by strapping
the patient to prevent movement during surgery. . . . On a follow
up of her knee pain January 8, 1997, it was noted that ‘apparently
during her recent surgery, her knees were taped in an untoward
position, resulting in some problems. Difficult to know exactly
what, but it is felt that she has some cartilage torn in the left
knee.’. . . . It is my expert opinion, based upon a reasonable
medical probability, that the knee injuries suffered by the patient
were due to the failure of the operating room personnel to exercise
ordinary care, or negligence of the operating room personnel , in
placing and maintaining her position on the operating table.
 
          Does Dr. Callewart’s report provide enough information to inform the
defendant Hospital of the specific conduct the plaintiff has called into question,
and to provide a basis for the trial court to conclude that the claims have merit?
          Clearly, Dr. Callewart’s report gives notice that the manner in which the
hospital personnel strapped the plaintiff to the operating table was called into question. 
The standard of care requires hospital personnel to take necessary precautions to pad
and avoid the placement of the leg/knee in an abnormal position by strapping
(standard of care); a medical report indicated that plaintiff’s knees were taped in an
untoward position on the operating table, and based on a reasonable medical
probability, it was Dr. Callewart’s expert opinion that the plaintiff’s knee injuries were
due to the failure of the hospital personnel to properly place and maintain plaintiff’s
position on the operating table (breach and causal connection).
          This case is unlike the Palacios case. American Transitional Care Centers v.
Palacios, 46 S.W.3d 873 (Tex. 2001). In Palacios, the patient fell from his bed, and
the expert opined that “precautions to prevent [the patient’s] fall were not properly
utilized.” Id. at 880. The supreme court held that this was not a statement of a
standard of care because neither the trial court nor the defendant would be able to
determine from this statement if the doctor “believes that the standard of care required
[defendant] to have monitored Palacios more closely, restrained him more securely,
or done something else entirely.” Id. In contrast, the expert’s report in the present
case puts the trial court and the defendant on notice of the conduct complained of, i.e.
that the hospital personnel failed to properly pad and place the leg/knee in a normal
position when strapping the plaintiff to the operating table—by taping the leg in an
untoward and abnormal position, a tearing injury was caused to the plaintiff’s knee.
          Under the guiding principles set out in Bowie and Palacios, Dr. Callewart’s
report constitutes a good-faith effort to provide a fair summary of the doctor’s
opinions about the standard of care, breach and causal connection. Accordingly, the
trial court abused its discretion when it granted the defendant’s motion challenging the
adequacy of the report resulting in a dismissal, with prejudice, of the plaintiff’s claims
against the hospital.
Claims against Dr. Blum
          Dr. Callewart’s report reads, in relevant part:
A. Injury
“I have reviewed the medical records furnished in the case of
Myrna Strom. . . .
 
In February of 1997, she was seen by Dr. Henry Blum, an
orthopedic surgeon, with her chief complaint involving her left
knee. X-rays showed degenerative changes with medial joint
space narrowing and some calcification in the notch, and his
impression of torn medial meniscus and chondromalacia. Again,
he reports that she had no prior history of knee related complaints
prior to surgery in question. Dr. Blum performed the menisectomy
on February 12, 1997. On March 3, 1997, it is reported that she
is doing fantastic after surgery. However, on April 19, 1997,
Dr. Blum indicates the patient needs a total knee replacement, and
on July 28, 1997, reports that she is scheduled for a total knee
replacement on August 1, 1997.
 
(Emphasis added). Dr. Blum performed the total knee replacement surgery on the 
 
plaintiff.
 
          B. Standard of Care
 
The surgery would . . . violate the standards of care which would
be expected to be exercised by a reasonable and prudent
orthopedic surgeon under the same or similar circumstances. 
 
          C. Breach
 
Based upon the records, it is my expert opinion that the total knee
and carpal tunnel releases were not medically indicated. There is
no justification or very clear indication in the chart for the surgery. 
There is some suggestion she had severe arthritis in the knee;
however, this is not consistent with what was reported in the knee
at the time of the prior surgery or other evaluations of the knee. If
she had severe degenerative joint disease, this could not have
occurred in a several months time frame from when she had the
surgery of the neck or from the time of February 12, 1997, surgery.
 
Based upon a reasonable medical probability, the records indicate
no medical basis of reason for the total knee replacement in a
woman in her middle 50's who weighs 240 lbs, who had reportedly
a normal knee prior to the operative room injury. The surgery
would therefore violate the standards of care which would be
expected to be exercised by a reasonable and prudent orthopedic
surgeon under the same or similar circumstances, and gross
negligence to submit such a patient to unnecessary surgery.
 
 

          D. Causal Connection
 
Based upon the records, it is my expert opinion that the total knee
and carpal tunnel releases were not medically indicated. There is
no justification or very clear indication in the chart for the surgery.
. . . Based upon a reasonable medical probability, the records
indicate no medical basis of reason for the total knee replacement
. . . .
 
          Does Dr. Callewart’s report provide enough information to inform the
defendant Doctor of the specific conduct the plaintiff has called into question, and
to provide a basis for the trial court to conclude that the claims have merit?
          It is clear from Dr. Callewart’s report that the conduct called into question is the
performance of a total knee replacement operation, when such surgery was
unnecessary. The report provides a fair summary of Dr. Callewart’s opinions about
the standard of care (that which would be expected to be exercised by a reasonable
and prudent orthopedic surgeon under the same or similar circumstances), breach
(performing “unnecessary” knee replacement surgery, which is “not medically
indicated”, for which there is “no justification...in the chart”), and causal connection 
(the breach of the applicable standard of care caused the injury of unnecessary knee
replacement surgery).
          With regard to standard of care, the Texas Supreme Court stated in Palacios:
The standard of care for a hospital is what an ordinarily prudent hospital
would do under the same or similar circumstances. . . . . Identifying the
standard of care is critical: Whether a defendant breached his or her duty
to a patient cannot be determined absent specific information about what
the defendant should have done differently.
 
Id. at 880. In the present case, the expert’s report identified the standard of care for
an orthopedic surgeon, and specifically stated what care was expected, but not given,
i.e., a diagnosis and action based on what is medically indicated, not the performance
of unnecessary major surgery.
          Once again, under the guiding principles set out in Bowie and Palacios, Dr.
Callewart’s report constitutes a good-faith effort to provide a fair summary of his
opinions about the standard of care, breach, and causal connection. Accordingly, the
trial court abused its discretion when it granted the defendant doctor’s motion
challenging the adequacy of the report resulting in a dismissal, with prejudice, of the
plaintiff’s claims against the defendant, Dr. Blum. 
CONCLUSION
          We should sustain appellant Strom’s points of error one through seven, reverse
the judgment, and remand the case to the trial court.
 
 
 

 
 
 
 
 
                                                             Margaret Garner Mirabal



                                                             Justice
 
Panel consists of Justices Taft, Hanks,


 and Mirabal.
 
Justice Mirabal, dissenting.