IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00137-CV

 

Billie Lynn Raines 

and Richard Benelayton Raines,

                                                                      Appellants

 v.

 

Ronald D. Stephens, M.D., et al.,

                                                                      Appellee

 

 

 



From the 87th District Court

Limestone County, Texas

Trial Court # 26,494-B

 



MEMORANDUM 
Opinion



 

This is a medical malpractice case
involving bladder injuries resulting from a “bungled” hysterectomy performed on
Billie Lynn Raines.  Billie and Richard
Raines sued Dr. Ronald D. Stephens[1]
under former article 4590i of the Texas Medical Liability and Insurance
Improvement Act of Texas (the “Act”).[2]  Dr. Stephens challenged the sufficiency of
the Raines’ expert report for failure to include the required causation element
and that the expert was not qualified.  The
trial court dismissed the cause of action against Dr. Stephens with
prejudice.  The Raines appeal in two
issues: trial court abused discretion in finding (1) the expert report did not
include the causation requirement and (2) the expert was not qualified.

We will overrule issue one and will
not need to address issue two.  We will
affirm the judgment.

BACKGROUND

Facts

Billie, a 35-year-old woman was
suffering from abnormal menstrual bleeding (metrorrhagia and menorrhagia).  She saw Dr. Stephens, a general family
physician, and wanted a hysterectomy to fix her problem.  She told Dr. Stephens that she had been on
oral contraceptives for a year, but they had caused weight gain.  She also told him that she had an ultrasound
and uterine scope performed.  Her mother
and sister had also already had hysterectomies. 
Dr. Stephens referred Billie to Dr. Ramirez, a general surgeon.  Dr. Ramirez performed a hysterectomy, and
during the surgery, he removed a large portion of Billie’s bladder and
transsected her ureters causing permanent injuries to her bladder.  Billie alleges that she will never regain normal
bladder function.  According to her
expert, Billie had an endometrial polyp that was the cause of her bleeding, and
it could have been removed with dilation and curettage, thereby avoiding the hysterectomy.

Petition

The Raines sued Dr. Stephens stating
in their petition:

DR. STEPHENS’ NEGLIGENCE

 

15. Dr. Stephens practiced below the standard of
reasonable medical care in failing to investigate the cause of Mrs. Raines’
complaints of metrorrhagia and menorrhagia. 
In this respect, Plaintiffs would show that Dr. Stephens was negligent
as follows:

(1) In failing to perform a
pre-operative endometrial biopsy or hysteroscopy with fractional D&C to
evaluate the source of the persistent uterine bleeding problems experienced by
Mrs. Raines.  Had Dr. Stephens performed this
simple procedure, he would have discovered what was later revealed in the
pathology report post-surgery that a “sizeable, somewhat pedunculated
endometrial polyp was present.” 
Significance of the presence of this polyp is that such endometrial
polyps commonly cause metrorrhagia and often cause menorrhagia.  Had Stephens investigated the cause of Mrs.
Raines’ symptoms and followed standard medical practice, he would have
discovered the polyp, addressed that problem, and avoided the surgical
procedure which turned out to be disastrous for Mrs. Raines.

(2) Dr. Stephens failed to remove
the endometrial polyp and place Mrs. Raines on oral contraceptives for two to
three months to see if normal menstrual cycles would resume before resorting to
the hysterectomy procedure.  Had the
proper diagnostic work up been performed by Dr. Stephens, the standard of care
would have led him to remove the endometrial polyp, place Mrs. Raines on oral
contraceptives for two or three months, most likely allowing Mrs. Raines to
resume her normal menstrual cycles, and avoid the hysterectomy procedure.

 

MRS. RAINES’ INJURIES

 

16. As a direct and proximate result of the
negligence of Drs. Ramirez and Stephens, as set forth above, Mrs. Raines
suffered severe, permanent and life-changing injuries.  During the operative procedure of March 26,
 2001, Dr. Ramirez removed
a large portion of Mrs. Raines’ bladder and transsected her ureters.  These injuries have resulted in Mrs. Raines
undergoing five subsequent surgeries in an attempt to establish improved
bladder function.  Mrs. Raines will never regain
normal bladder function despite the extensive subsequent medical
treatment which she has received and which she will continue to receive in the
future.

 

MRS. RAINES’ DAMAGES

 

17. As a direct and proximate result of the
injuries which she received due to the negligence of Drs. Ramirez and Stephens,
as outlined above, Mrs. Raines suffered urological injuries which
have resulted in the following elements of damage, to-wit:

 

(a) Physical pain and mental anguish in the
past;

(b) Physical pain and mental anguish in the
future;

(c) Physical impairment in the past;

(d) Physical impairment in the future;

(e) Loss of earning capacity in the past;

(f) Loss of earning capacity in the future;

(g) Reasonable and necessary medical expenses in
the past;

(h) Reasonable and necessary medical expenses in
the future.

 

MR. RAINES’ DAMAGES

 

18. As a result of the urological injuries
sustained by his wife, Mr. Raines has sustained a loss of consortium, or a loss
of affection, solace, comfort, companionship, society, assistance, sexual
relations, emotional support, love and felicity necessary to a successful
marriage in the past, and in reasonable probability, will sustain such loss of
consortium in the future.  In addition,
Mr. Raines has suffered a loss of his wife’s household services in the past and
a loss of his wife’s capacity to perform household services in reasonable
probability in the future.

 

PLAINTIFFS’ CLAIM FOR COMPENSATION

 

19. As a result of the urological injuries
sustained by Mrs. Raines[,] Plaintiff have suffered damages within the
jurisdictional limits of this Court.  In
addition to such damages, Plaintiffs would show that they are entitled to
prejudgment interest . . . . (Emphasis added).

 

Expert Report

In support of their lawsuit, the
Raines retained Dr. Bruce Halbridge, a board certified obstetrician and
gynecologist, to prepare a report giving his opinion on Dr. Stephens’
conduct.  Dr. Halbridge’s report and
curriculum vitae do not show any training in family practice.  In the report, Dr. Halbridge states that Dr.
Stephens’ assessment was: (1) irregular menses (menorrahagia); (2) the patient
wanted a hysterectomy; and (3) schedule an appointment with Dr. Ramirez.  Dr. Halbridge states that “the standard of
care requires that the patient’s Primary Care Physician perform medical and
other diagnostic tests to determine if there is a medical or physical organic
cause for the recurrent menorrahagia.” 
He lists eight tests that he claims Dr. Stephens should have performed, including
a vaginal ultrasound.  Dr. Halbridge
states:

It is very likely that a vaginal
ultrasound performed prior to the hysterectomy on 3/26/01 would have demonstrated the presence of the
endometrial polyp.  This undiagnosed
polyp was the cause of Billie Raines recurrent mennorrhagia.  The polyp could have been easily removed at
the time of a hysteroscopy with dilation and curettage avoiding the hysterectomy.


 

Dr. Stephens assisted Dr. Ramirez
during the hysterectomy.  As a Family
Practitioner, Dr. Stephens did not have the extensive surgical training that
gynecologists possess.  Dr. Stephens
could not be of significant help in dissection required to safely remove the
uterus after separating it from the bladder. 
Gynecologists, not Family Practitioners should be assisting at difficult
gynecologic surgeries such as Billie Raines hysterectomy. (Emphasis added).

 

ISSUE
ONE: ADEQUACY OF THE REPORT

 

Arguments

The Raines claim the trial court
abused its discretion when it determined that Dr. Halbridge’s expert report did
not constitute a good-faith effort to meet the statutory requirements of former
article 4590i.  Dr. Stephens challenges
the causation element of the report and contends it does not meet the statutory
requirements because it is conclusory in that it does not show how the failure
to conduct the vaginal ultrasound caused Billie’s bladder injuries.

The Raines respond that their expert
report includes the causation requirement. 
They argue that, from the four corners of the report, it “is easily
understood to say that Dr. Stephens was negligent in failing to perform a
differential diagnosis, including a pelvic ultrasound with vaginal probe, which
would have detected the polyps, allowed their easy removal, cured Mrs. Raines
of her abnormal menstrual bleeding, and made her hysterectomy unnecessary.”

Standard of Review

An expert report must provide “a
fair summary of the expert’s opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and
the causal relationship between that failure and the injury, harm, or damages
claimed.”  Tex. Rev. Civ. Stat. Ann. art. 4590i §
13.01(r)(6) (repealed 2003) (emphasis added). 
If the plaintiff timely files an expert report and the defendant moves
to dismiss based on the report’s inadequacy, the trial court must grant the
motion “only if it appears to the
court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report
in Subsection (r)(6) of this section.”  See Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 51-52 (Tex. 2002) (emphasis in original) (citing Tex. Rev. Civ. Stat. Ann. art. 4590i §
13.01(l)).  To constitute a good-faith
effort, the report must: (1) inform the defendant of the specific conduct the
plaintiff has called into question, and (2) provide a basis for the trial court
to conclude that the claims have merit.  American Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 879
(Tex. 2001). 
The trial court should look no further than the four corners of the
report, because all of the information relevant to the inquiry is contained within
the document’s four corners.  See Wright, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 878.  We review a trial court's dismissal of a suit
for failure to comply with the Act under an abuse of discretion standard.  Id.




Applicable Law

The Wright case is almost identical to this case.  In Wright,
the Supreme Court held that the following statement in the expert report was
insufficient to establish causation: “if the x-rays would have been correctly
read and the appropriate medical personnel acted upon those findings then
Wright would have had the possibility of a better outcome.”  Wright,
79 S.W.3d at 53.  The Wrights’
allegations stated that Bowie Hospital personnel did not diagnose Wright’s foot
fracture, protect her foot, or review diagnostic tests ordered and administered
at the hospital.  Id. at 50. 
As in Palacios, the Court
again held that “the only information relevant to whether a report represents a
good-faith effort to comply with the statutory requirements is the report
itself.”  Id. at 53 (citing Palacios, 46 S.W.3d at 878). 
The Court goes on to state:

After reviewing this report, we conclude that
the trial court could have reasonably determined that the report does not
represent a good-faith effort to summarize the causal relationship between Bowie’s failure to meet the applicable standards of
care and Barbara’s injury.  See TEX. REV. CIV. STAT. art. 4590i, §
13.01(r)(6); Palacios, 46 S.W.3d at
879.  That is because the report simply
opines that Barbara might have had “the possibility of a better outcome” without
explaining how Bowie’s conduct caused injury to Barbara.  We
cannot infer from this statement, as the Wrights ask us to, that Bowie’s alleged breach precluded Barbara from
obtaining a quicker diagnosis and treatment for her foot.  Rather, the report must include the required
information within its four corners.  See TEX. REV. CIV. STAT. art. 4590i, § 13.01(r)(6); Palacios, 46 S.W.3d at 878.  Because the report lacks information linking
the expert’s conclusion (that Barbara might have had a better outcome) to Bowie’s alleged breach (that it did not correctly
read and act upon the x-rays), the trial court could have reasonably determined
that the report was conclusory.  See Palacios, 46 S.W.3d at 880; Earle, 998 S.W.2d at 890.  A conclusory report does not meet the Act’s
requirements, because it does not satisfy the Palacios test.  Palacios, 46 S.W.3d at 879.

 

Id. (emphasis added).

To evaluate
whether the expert report linked the alleged breach (failure to correctly read
and act upon the x-rays) to the claimed injuries/damages (damages to her foot
from an undiagnosed fracture), as required by section (r)(6), the Court must
have also considered the pleadings to determine the claimed
damages/injuries.  Following Wright, we must: (1) consider the four corners
of the pleadings to determine the claimed injuries/damages; and (2) review the
four corners of the expert report to determine if the alleged breach is linked
to the claimed injuries/damages.[3]  Tex.
Rev. Civ. Stat. Ann. art. 4590i § 13.01(r)(6); Wright, 79 S.W.3d at 53.

Analysis

Claimed Injuries/Damages

A review of the four
corners of the pleadings makes it clear that Billie is claiming urological
injuries and bladder dysfunction.  Thus,
we will review the four corners of the expert report to determine if the report
is a good-faith effort to comply with subsection (r)(6)—does the report state
the causal relationship between Dr. Stephens’ alleged failure to meet his
standard of care and Billie’s urological injuries and bladder dysfunction.

Causation

The expert report need not marshal
all of the plaintiff's proof, or present evidence as if the plaintiff was
actually litigating the merits.  See Wright, 79 S.W.3d at 52-53; Palacios, 46 S.W.3d at 878.  No magic words such as “reasonable medical
probability” are required for the report to comply with the Act.  Wright,
79 S.W.3d at 53.  However, a report that
merely sets forth the expert's conclusions is insufficient.  Id. at 52. 
The expert must explain the basis of his statements to link his
conclusions to the facts.  Id.

According to the four corners of the
expert report, Dr. Stephens alleged breach was failing to perform the vaginal
ultrasound.  The statements that the
Raines rely on to meet the causation element do not provide any information
linking Dr. Stephens’ alleged breach (failure to perform the vaginal ultrasound)
to Billie’s claimed injuries and damages (bladder dysfunction/urological
injuries).  We cannot infer from Dr.
Halbridge’s statements that the hysterectomy would not have been performed at
all, or properly performed, if Dr. Stephens had ordered the vaginal ultrasound
and discovered the endometrial polyp.  In
fact, Dr. Halbridge states that Billie wanted a hysterectomy.  Dr. Halbridge never mentions that the
hysterectomy was “bungled” or that Billie has bladder injuries from the negligently
performed hysterectomy.  At most, Dr.
Halbridge finds that the hysterectomy may have been avoided.  His report does not link Dr. Stephens’
purported breach of the standard of care to Billie’s bladder injuries, and thus
the report does not represent a good-faith effort to comply with former article
4590i’s requirement on causation.  See Wright, 79 S.W.3d at 52-53; Palacios, 46 S.W.3d at 878.  We note that the report states Dr. Stephens
assisted in the surgery and alludes that Dr. Stephens was not qualified to
assist in the surgery.  However, Dr.
Halbridge does not describe any acts by Dr. Stephens during the surgery and
never attempts to link any acts by Dr. Stephens during the surgery to Billie’s
bladder injuries.

The report must provide sufficient
specificity for the trial court to conclude the medical malpractice suit has
merit.  Wright, 79 S.W.3d at 52.  Texas courts have long recognized that liability in a
medical malpractice suit cannot be made to turn upon speculation or conjecture.
See, e.g., Lenger v. Physician's Gen.
Hosp., Inc., 455 S.W.2d 703, 706 (Tex. 1970); Bowles
v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 785 (1949).  “The proof must establish causal connection
beyond the point of conjecture.  It must
show more than a possibility.”  Lenger, 455 S.W.2d at 706.  Accordingly, while a “fair summary” is
something less than all the evidence necessary to establish causation at trial,
even a fair summary must contain sufficiently specific information to demonstrate
causation beyond mere conjecture in order to meet the Act's requirements and
satisfy the Palacios test.  See
Wright, 79 S.W.3d at 52.  Dr.
Halbridge’s report fails to provide sufficiently specific information to show
more than possibility and speculation on the element of causation of the
injuries Billie now claims.  See Wright, 79 S.W.3d at 52; Lenger, 455 S.W.2d at 706.

We overrule the first issue.

CONCLUSION

Having overruled the Raines’ first
issue, we need not reach their second issue. 
The trial court’s judgment dismissing the Raines’ claims with prejudice
is affirmed.

 

 

BILL VANCE

Justice

 

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

          (Chief Justice Gray
concurring)

Affirmed

Opinion delivered and filed February
 23, 2005

[CV06]











    [1]       Billie also sued Dr. Roque Joel Ramirez,
who performed the surgery, Surgeonone, Inc., and Parkview Regional Hospital,
Inc.  These claims were separately
resolved by the trial court.

 





    [2]       Article 4590i was amended in 1995 to include
the requirements of an expert report and curriculum vitae. Act of May 18, 1995,
74th Leg., R.S., ch. 140, 1995 Tex. Gen. Laws 985, 986, repealed by Act of June
11, 2003, 78th Leg., R.S., ch. 204, 2003 Tex. Gen. Laws 847, 884. Although it
has been repealed by the codification, we refer throughout this opinion to the
version in effect at the time Langley's claims were dismissed as “article 4590i.”





    [3]       This analysis is similar to the
eight-corners analysis required to determine if insurers have a duty to defend
where the court considers only the facts alleged in the four-corners of the
pleadings of the underlying lawsuits and the language of the four-corners of
the insurance contract.  See e.g., National Union Fire Ins. Co. v.
Merchants Fast Motor Lines, 939 S.W.2d 139, 141 (Tex. 1997).