NUMBER 13-05-529-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

MARIANO SALINAS, M.D.,                                                             Appellant,

 

                                                             v.                                

 

JORGE A. GOMEZ AND STEFANIA GOMEZ,

AS NEXT FRIENDS OF ISAIAH J. GOMEZ,
A MINOR,                 Appellees.

 

      On
appeal from the 206th District Court of Hidalgo County, Texas.

 

 

                               MEMORANDUM
OPINION

 

                         Before
Justices Hinojosa, Yañez, and Garza 

                            Memorandum
Opinion by Justice Garza

 

Appellant, Mariano Salinas, M.D., makes this
interlocutory appeal in a suit for medical negligence following the trial court=s entry of an order denying appellant=s motion to dismiss claims and to award attorney=s fees and court costs.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(b) (Vernon Supp. 2005).  We affirm.   









Appellees, Jorge A. Gomez and Stefania Gomez, as
next friends of Isaiah Gomez, a minor, 
sued appellant and Wilson Sy, M.D., to recover damages for permanent
disability suffered by Isaiah Gomez as a result of medical negligence.[1]  To support these allegations, and to meet the
requirements of section 74.351, appellees filed the expert report of Joseph P.
McCarty, M.D., which states, among other things, that appellant=s treatment of Isaiah Gomez fell below the applicable
standard of care in that appellant failed to exercise the reasonable care of an
ordinary pediatrician in the same or similar circumstances by (1) failing to
monitor and record the head circumference of Isaiah Gomez during each
well-child visit, which would have allowed for an earlier diagnosis and
treatment of the condition afflicting Isaiah Gomez, and (2) failing to refer
the patient for neurological evaluation in a timely manner.  The report states that the deficiencies in
appellant=s treatment caused a delay in diagnosing Isaiah,
which allowed his condition to worsen irrevocably, causing permanent brain
damage.

Appellant maintains that the expert report relied
upon by appellees is inadequate because it does not address how appellant
allegedly breached the applicable standard of care and because it wholly fails
to establish any causal relationship between the alleged negligence and the
injury, harm, or damages claimed.  We
disagree.

I.  Expert
Reports under Section 74.351








            We review all section 74.351 rulings
under an abuse of discretion standard.  Am.
Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001).  Pursuant to section 74.351, medical
malpractice plaintiffs must provide each defendant physician and health care
provider with an expert report or voluntarily nonsuit the action.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351.  If a
claimant timely furnishes an expert report, a defendant may file a motion
challenging the report=s adequacy.  See
id. ' 74.351(a). The trial court shall grant the motion
only if it appears, after hearing, that the report does not represent a good
faith effort to comply with the statutory definition of an expert report.  See id. '
74.351(l).  The statute defines an expert
report as a written report by an expert that provides, as to each defendant, a
fair summary of the expert=s opinions as of the date of the report regarding
(1) applicable standards of care, (2) the manner in which the care provided
failed to meet the standards, and (3) the causal relationship between that
failure and the injury, harm, or damages claimed.  See id. '
74.351(r)(6); Palacios, 46 S.W.3d at 878B79.








Although the report need not marshal all the
plaintiff=s proof, it must include the expert=s opinions on the three statutory elements: (1)
standard of care, (2) breach, and (3) causation.  See Palacios, 46 S.W.3d at 878B79.  In
detailing these elements, a report produced as the result of a good-faith
effort must provide enough information to (1) inform the defendant of the
specific conduct the plaintiff has called into question and (2) provide a basis
for the trial court to conclude that the claims have merit.  Id. at 879.  A report that merely states the expert=s conclusions as to the standard of care, breach,
and causation does not fulfill these two purposes.  Id. 
The expert must explain the basis for his statements and must link his
conclusions to the facts.  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). 
Furthermore, in assessing the report=s
sufficiency,  the trial court may not
draw any inferences, but must instead rely exclusively on the information
contained within the report=s four corners. 
See Palacios, 46 S.W.3d at 879.

II.  Analysis

Appellant raises no complaint about the standard of
care as it is stated in Dr. McCarty=s report:

The standard of care for any infant requires close
follow up of head growth, especially during the first year of life.  The head circumference is measured because it
is a direct reflection of brain growth. 
Most brain growth occurs during the first two years of life.  For that reason, identifying problems is
important so intervention can be undertaken before significant permanent injury
has occurred.  The head circumference is
then plotted against standards for the patient=s
age.  These are  typically listed as percentiles.  Head growth is typically at a consistent
percentile.  If the percentile is
decreasing, then there is concern about lack of brain growth.  If the percentile is increasing, there is
concern about excessive brain growth or excessive fluid in the skull.  When head growth is noted to be too slow or
too rapid, it should necessitate prompt referral to a specialist, typically a
pediatric neurologist, for evaluation. 
The pediatric neurologist should then initiate an evaluation for the
cause of the increased head growth.  This
evaluation should include review of any available past records, examination of
the patient and a thorough history.  If
the evaluation demonstrates progressive hydrocephalus, then prompt referral to
a neurosurgeon is essential for a shunt to drain the excessive fluid from the
skull and prevent additional brain injury.          

 

As noted above, appellant challenges the adequacy of
the report to fulfill the second and third requirements of the statute:  to describe the manner in which the care
provided failed to meet the applicable standard of care, and to give an opinion
regarding the causal relationship between that failure and the injury, harm, or
damages claimed.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6). 
We believe appellant=s challenges are without merit. 








Dr. McCarty=s report states that appellant failed to meet the
applicable standard of care because he did not adequately evaluate Isaiah Gomez
during the well-child visits, which should have involved close, follow-up
monitoring of the patient=s head growth, including a record of head
circumferences, as measured during each visit. 
According to Dr. McCarty=s report, such monitoring would have alerted the
treating pediatrician to abnormal brain development and prompted the
pediatrician to refer Isaiah to a specialist for immediate evaluation.  This did not happen.   

The report notes that appellant first saw Isaiah on
April 22, 2002, when Isaiah was two months old. 
At that time, appellant recorded Isaiah=s head
circumference as being in the 15th percentile. 
No measurements are noted for appellant=s next
six visits with Isaiah.      On February 26, 2003, just after Isaiah=s first birthday, appellant apparently referred
Isaiah to Wilson Sy, M.D., a pediatric neurologist.  An annotation in the chart shows the
appointment was later cancelled.  The record
does not indicate who cancelled the appointment or for what reason. 

Appellant evaluated Isaiah again on July 3, 2003, at
which time, appellant estimated that Isaiah=s head
circumference was at or near the 24th percentile.  Appellant made a second referral to Dr. Sy. 

On July 17, 2003, Dr. Sy evaluated Isaiah and
recorded his head circumference as being above the 98th percentile.  Dr. Sy also noted that Isaiah exhibited
developmental delays.  

Dr. McCarty=s report suggests that appellant=s previous evaluation, which placed Isaiah=s head circumference in the 24th percentile as of
July 3, 2003, must be Agrossly inaccurate@
because Dr. Sy=s measurements placed Isaiah in the 98th percentile
just two weeks later, on July 17, 2003. 








            Dr. McCarty concludes his report by
describing the causal connection between appellant=s failure to meet the applicable standard of care
and the injuries suffered by appellees:

This failure to monitor and timely refer allowed
this patient=s head to continue to grow abnormally.  The increase in head circumference was a
direct result of increased intracranial pressure caused by progressive
hydrocephalus.  The untreated increased
intracranial pressure directly caused brain cell injury and death which
proximately caused Isaiah Gomez=s permanent disability.

 

Based on this review, we conclude that the report
meets the statutory requirements and is more than adequate to inform the
defendant of the specific conduct the plaintiffs have called into question and
to provide a basis for the trial court to conclude that the claims have merit.  See Palacios, 46 S.W.3d at 879.

In reaching this conclusion, we find it appropriate
to note our disagreement with appellant=s interpretation of the report.  See Tex.
R. App. P. 47.1.  Appellant
maintains that the professional opinions expressed within the four corners of
Dr. McCarty=s report actually serve to exonerate appellant.   We find this to be a very strained
interpretation.  

In one section of his report, Dr. McCarty explains
how pediatricians detect abnormal head growth in infants:  

On most head circumference charts, there are lines
at the 5, 10, 15, 25, 50, 75, 90, and 95 percentiles.  If a head size crosses two percentile lines,
that should be a red flag for further evaluation or consultation.  In this case, when the head circumference
exceeded the 50th percentile, Isaiah should have been referred for additional
evaluation.  

 








In making his four-corners argument, appellant
relies heavily on Dr. McCarty=s last statement about the head circumference
exceeding the 50th percentile.  According
to appellant, Isaiah=s head circumference did not exceed the 50th
percentile until July 17, 2003, when Dr. Sy evaluated him for the first
time.  Appellant contends that he
therefore could not have breached the standard of care by failing to timely
refer Isaiah to a specialist and that, under the standard of care set forth in
the report, appellant was in no way negligent. 


Appellant=s interpretation of the report is problematic in at
least two respects.  First, it ignores
the actual opinions expressed by Dr. McCarty in the report, which unambiguously
fault appellant for failing to record head measurements and failing to timely
refer Isaiah to a specialist.  Second,
appellant=s interpretation does not account for the portion of
the report in which Dr. McCarty specifically states that the last measurement
taken by appellant was Agrossly inaccurate.@  Dr. McCarty states that the head
circumference could not have been in the 24th percentile and then surge into
the 98th percentile just two weeks later. 
Dr. McCarty concludes that appellant=s
measurements must have been inaccurate.  
           There is no indication
in the expert report that Isaiah=s head circumference was at or below the 50th
percentile at the time appellant referred Isaiah to Dr. Sy on July 3,
2003.  Nor is there any basis in the
report for concluding that Isaiah=s head circumference was at or below the 50th
percentile on February 26, 2006, when appellant first referred Isaiah to Dr.
Sy.  In short, the report does not prove,
attempt to prove, or provide any basis for concluding that appellant=s referral was timely or that appellant=s treatment of Isaiah met the applicable standard of
care.   








In fact, the report plainly seeks to establish the
exact opposite.  Dr. McCarty faults
appellant for not seeing the Ared flag@ warning signs of abnormal head growth.  Throughout the report, Dr. McCarty explains
that, if appellant had properly measured and recorded Isaiah=s head circumference during each well-child visit,
as the applicable standard of care demands, he would have seen the Ared flag@ and known to take appropriate action.   Appellant=s
failure to meet the standard of care delayed the diagnosis of Isaiah=s condition and also delayed treatment.  According to the report, this caused Isaiah
to suffer permanent disability. 

Relying exclusively on the information contained
within the four corners of the report, we conclude that Dr. McCarty=s opinion unambiguously faults appellant for failing
to meet the applicable standard of care and plainly connects appellant=s breach to the injuries and damages now claimed by
appellees.  See Palacios, 46
S.W.3d at 879.  We find no support for
appellant=s contention that Dr. McCarty=s report actually exonerates appellant.     

We also disagree with appellant=s criticism that the report is Amerely conclusory@ on
the issue of causation.  See Tex. R. App. P. 47.1.  Relying on an unpublished memorandum opinion
from the Amarillo Court of Appeals, appellant argues, AWhere an expert=s opinions regarding causation are dependent upon
the occurrence of a particular circumstance and the expert=s opinions are based upon hypotheticals, they are
merely conclusory and such a report does not satisfy the definition of an
expert report.@  See Tex. R. App. P. 47.7 (regarding
citation to unpublished opinions).  

Dr. McCarty=s report states that no surgical treatment of Isaiah
was undertaken until May 26, 2004, more than one year after appellant first
referred Isaiah to Dr. Sy.  Based on this
fact, appellant argues that Afor Plaintiffs= expert to opine that an earlier referral would have
prevented a continual abnormal growth and progressive hydrocephalus is nothing
more than conjecture and speculation, since the pediatric neurologists to whom
the patient was referred did not recommend any surgical procedure regarding
Plaintiff=s hydrocephalus until much later.@           








Though creative, appellant=s argument can hardly support its own weight,
especially in consideration of the original petition filed by appellees, which
names both appellant and Dr. Sy as defendants. 
Among other things, appellees complain that Dr. Sy Anegligently failed to provide services and timely
referral to pediatric surgical specialists when evidence of increasing head
circumference was evident.@  Dr. McCarty=s report provides expert support for these
allegations.  It states that Dr. Sy
failed to meet the standard of care applicable to a pediatric neurologist under
the same or similar circumstances by failing to take appropriate action to
alleviate the patient=s condition or by referring the patient to a
pediatric neurosurgeon. 

Appellant claims that Dr. McCarty=s report is inadequate as to causation, but the
report plainly links Dr. McCarty=s conclusions to the facts of the case.  See Wright, 79 S.W.3d at 52.  Appellant appears to be capitalizing on the
fact that he is not the only physician who is alleged to have been negligent in
treating Isaiah.  In our view, this
consideration alone does not render Dr. McCarty=s
report inadequate.  Dr. McCarty=s report clearly sets forth the standard of care
applicable to the physicians, how each physician breached the standard, and how
those breaches caused the injuries complained of and damages now sought.  See Palacios, 46 S.W.3d at 878B79.  

Whether appellant can ultimately defeat appellees= claims based on the alleged negligence of Dr. Sy
remains an inchoate possibility, the realization or elimination of which will
not occur as a result of today=s decision.  For
now, we note that Dr. McCarty=s opinion on causation is not based on hypotheticals
or on the occurrence of a particular circumstance, as appellant contends.  To the contrary, the opinion is expressly
based on the facts of the case as developed in the medical records listed in
Dr. McCarty=s report, in addition to Dr. McCarty=s 22 years of clinical practice in pediatric
neurology.        








The trial court did not abuse its discretion in
denying appellant=s motion to dismiss and for sanctions.   

III. 
Conclusion 

            The order of the trial court is
affirmed.                                                                    

 

 

_______________________

DORI CONTRERAS GARZA,

Justice

 

Memorandum Opinion delivered and 

filed this the 30th day of March, 2006.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











[1] 
Appellant
is the only defendant making this interlocutory appeal.  To this Court=s knowledge, the claims against Dr.
Sy remain pending in the trial court.