# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00419-CV

**Richard Hebert and Janet Hebert, Appellants**

**v.**

**Timothy E. Hopkins, M.D., and Shannon Clinic, Appellees**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT NO. D-10-0285-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Because I believe the expert report in this case represents a good-faith effort to comply with the statutory definition of an expert report, I respectfully dissent.

The three significant Texas Supreme Court opinions that address the issue of determining the adequacy of an expert report are *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex. 2001); *Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48 (Tex. 2002); and *Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010). Together, those three cases describe and clarify the standards by which courts are to evaluate an expert report. Because those standards are appropriately set forth in the majority opinion, I will not repeat them all. But it is crucial to remember that all that is necessary to avoid dismissal is that the report represent a "good faith effort" to comply with the statutory definition of an expert report, which in turn requires only that the report provide "a fair summary of the expert's opinions" regarding standard of care, breach, and causation. Most important, the supreme court has defined "good faith effort" as "one that provides information

sufficient to (1) 'inform the defendant of the specific conduct the plaintiff has called into question,' and (2) 'provide a basis for the trial court to conclude that the claims have merit.'" *Jelinek*, 328 S.W.3d at 539 (quoting *Wright*, 79 S.W.3d at 52). I believe the report in the present case easily meets that test.

The first prong of the good-faith test is that the report must "inform the defendant of the specific conduct the plaintiff has called into question." In this regard, the expert report in this case could not be clearer: the standard of care requires that a spinal fracture complicated by pre-existing ankylosing spondylitis must be treated by posterior internal fixation, either alone or in combination with anterior internal fixation, ***not*** by anterior fixation alone, as was done by the defendant physician here. By my count, the medical expert's report contains no less than nine separate statements and/or explanations of this requirement, four in his original report and five more in his supplemental report.

●   "Anterior instrumentation only is predictably inadequate in a fracture pattern with gross anterior and posterior column instability such as Mr. Hebert's. Adequate treatment of Mr. Herbert's fracture requires anterior and posterior instrumentation in order to meet the standard of care."

●   "Dr. Timothy Hopkins' choice of anterior only plate/screw fixation fails to meet the applicable standard of care."

●   "In the absence of adequate posterior stability, anterior plate/screw constructs typically fail in flexion by plate breakage or, as in this case, by screw pullout. . . . Anterior only plate/screw fixation, in this setting, is predictably doomed to failure."

●   "The standard of care for the surgical treatment of this fracture requires a multilevel posterior fixation and a fusion in conjunction with anterior fixation and fusion with or without supplemental external fixation . . . ."

● "Dr. Hopkins performed an anterior (front) only plate and screw fixation. . . . The standards of care governing a prudent surgeon require that he not perform anterior only fixation with plate and screws . . . ."

● "The standards of care governing a prudent surgeon require that he perform a multilevel posterior instrumented fusion alone or in conjunction with an anterior instrumented fusion . . . ."

● "My opinion is that Dr. Hopkins breached the standard of care by performing a multi-level anterior only fusion and fixation with plate/screws without also performing a multi-level posterior fusion and fixation with instrumentation."

● "The factual basis for this opinion is that a prudent surgeon following the standards of care would not have performed an anterior only fusion with instrumentation to attempt to stabilize this very unstable fracture but would have performed an anterior instrumented fusion with plates/screws and a multilevel posterior instrumented fusion or a multilevel posterior instrumented fusion alone."

● "[P]erforming an anterior only fusion with instrumentation without also performing the posterior fusion and fixation was a breach of the standard of care because the standards of care require performing both procedures to adequately stabilize the very unstable fracture and anterior only surgery was doomed to fail . . . ."

There can be no doubt what conduct is being called into question.

The second prong of the supreme court's good-faith definition is that the report must "provide a basis for the trial court to conclude that the claims have merit." Here, the expert report goes into great detail in explaining the standard of care, why the actions of the defendant physician constituted a breach of the standard, and "how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 539-40. The report does not contain mere conclusions of the expert. Quite the contrary. As to causation, for example, the report explains at length the process by which the breach of the standard of care resulted in the plaintiff's paralysis:

My opinion is that performing an anterior only fusion with instrumentation without also performing a multilevel posterior instrumented fusion caused permanent and

irreversible spinal cord injury when the screw predictably pulled out in the post perioperative period. . . . When the screw pulled out of the vertebral segments of C-6 and C-7, the C-5 vertebral body was allowed to move on C-6 resulting in cord compression. The screw predictably failed because the anterior only approach was insufficient in the absence of inherent or surgically created posterior element stability, to stabilize the fracture and resist deformation due to flexion forces. When the screws failed, the vertebral segments moved resulting in cord compression. As a result, Mr. Hebert is now a quadraparetic, meaning he is nearly completely paralyzed from the chest down. If, instead of the anterior only surgery, Dr. Hopkins had performed an anterior and posterior instrumented fusion, like Dr. Duarte did on 9/12/08, it is highly probable the anterior implants would not have failed as they did, the resulting cord compression would have been avoided and Mr. Hebert would not have sustained his spinal cord injury and paralysis.

In the face of the expert report's highly detailed explanation of all of the elements required by *Palacios*, *Wright*, and *Jelinek*, the majority holds that a single sentence from the original report was so "internally inconsistent" as to the applicable standard of care that all of the report's detailed explanations and opinions were vitiated:

If the clinical situation in which the surgeon finds himself and the patient allows only inadequate internal fixation, the surgeon is obligated to protect the patient supplementing the internal fixation with external bracing and/or activity limitations.

There are several things to note about this sentence. First, it does not say that anterior only internal fixation could ***ever*** meet the standard of care in treating a patient with the conditions existing here. Indeed, the sentence does not explicitly reference anterior internal fixation at all. It is simply a general reference to a hypothetical situation in which "inadequate internal fixation" is, temporarily, the only available option under some presumably extraordinary circumstances. Second, whatever the general references to "clinical situation" and "inadequate internal fixation" mean, the report goes on to specify that the defendant breached the standard of care in ***this case***, as to ***this patient***.

4

This is an implicit statement that, to the best of the expert's knowledge, there were no extraordinary circumstances in this case. Third, and perhaps most important, the possible existence of extraordinary circumstances that might—or might not—justify the defendant physician's temporary use of anterior only internal fixation is a matter to be fleshed out during discovery and possibly trial, not as part of a gatekeeper effort to deter frivolous lawsuits. This is especially true in light of the fact that the medical records available to the expert in preparing his report may not have reflected whether any such extraordinary circumstances existed at the time of the surgery.[1] To require a report to negate possible defenses at this stage of the litigation creates an extra-statutory burden and is unfair to both the plaintiff and the medical expert.

I believe the expert report in this case constituted a good-faith effort to comply with the definition of an expert report, as required by the applicable statutes and supreme court precedent. Accordingly, I respectfully dissent.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Filed: March 1, 2013

_____

[1] Medical issues, like legal ones, are seldom black and white. One can imagine a hypothetical conversation between a plaintiff's attorney and the plaintiff's medical expert, in which the expert says something like, "In the overwhelming majority of cases like this, the standard of care is X. But I have to be candid: in a very small percentage of such cases, extraordinary circumstances may call for a different treatment approach. Nothing in the medical records I have seen indicates that such extraordinary circumstances existed in this case, but I would not be completely honest if I did not at least mention that possibility."