Affirmed and Memorandum Opinion filed July 1, 2008








Affirmed
and Memorandum Opinion filed July 1, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00996-CV

_______________

 

ROBERT MARVIN, Appellant

 

V.

 

 

VICKI FITHIAN, Appellee

                                                                                                                                               


On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2007-16171

                                                                                                                                                

 

M E M O R A N D U M  O P I N I O N








This
interlocutory appeal pertains to a health-care liability suit brought by
appellee, Vicki Fithian, against appellant, Dr. Robert Marvin.[1] 
In two issues, Dr. Marvin contends the trial court abused its discretion by
denying his motion to dismiss because Fithian=s expert report was insufficient as a
matter of law.  Because all dispositive issues are settled in Texas law, we
issue this memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

I. Background[2]

On
January 30, 2006, Dr. Marvin performed laparoscopic gastric band surgery on
Fithian at Renaissance Hospital in Houston, Texas.  Fithian remained in the
hospital for observation and was released the next day.

Following
Fithian=s discharge from Renaissance
Hospital, her daughter telephoned Dr. Marvin=s office to report that Fithian was
experiencing pain in her left side and had a body temperature of 99.8°F.  Later that day, Dr. Marvin=s office was informed that medication
had resulted in reduction of Fithian=s pain, and her temperature had
decreased to 97.9°F. 
On February 2, 2006, the third post-operative day, Fithian telephoned Dr.
Marvin=s office and complained that she was Anot feeling well.@ She had generalized pain, mild
shortness of breath, and a fever of 101.3°-101.8°F. 
Dr. Marvin referred Fithian for a computed axial tomography (CAT) scan which
revealed infiltrated lungs.  A chest x-ray revealed atelectasis,[3]
infiltrates, and probable small pleural effusions.[4] 
Additionally, Fithian=s white blood cell count was elevated to almost two times the
upper limits of normal, which is indicative of significant infection.  Dr.
Marvin prescribed antibiotics on February 3, 2006, after Fithian reported a
temperature of 101.2°F.

On
February 4, 2006, the fifth post-operative day, Fithian reported to Dr. Marvin
that her temperature was down to 98.1°F, but she was experiencing Aa lot of pain@ and requested a new prescription for
pain.  Dr. Marvin prescribed additional pain medication.








On
February 6, 2006, the sixth post-operative day, Dr. Marvin requested a new
chest x-ray and blood count.  The x-ray showed larger pleural effusions and Apulmonary consolitation.@[5]  Additionally, Fithian requested
that Dr. Marvin prescribe a recliner because she could not get comfortable when
Alying down.@  Dr. Marvin deemed her request Anot medically necessary@ and refused to prescribe a
recliner.  Later that day, Fithian=s sister called Dr. Marvin and stated
that it would be his fault if her sister had to be hospitalized in order to
sleep.

At 1:54
a.m. on February 7, 2006, Fithian went to the emergency room of Conroe Regional
Medical Center complaining of abdominal pain and a foul smelling drainage from
her abdominal wound.  A CAT scan showed multiple loculated fluid collections in
the upper abdomen, indicating peritonitis.[6] 
A blood specimen indicated acute renal failure.  Fithian was transported to
Renaissance Hospital around noon that same day.  Dr. Marvin performed surgery
and discovered well-developed peritonitis in the left upper quadrant.  After
removing the gastric band and releasing the imbricated stomach, Dr. Marvin
discovered a pinpoint area leaking Agastric juice.@  He installed a gastrostomy tube in
order to feed Fithian. He also performed extensive debridement[7]
of  muscle, subcutaneous fat, and skin around the area where the surgical
access port had been placed. The skin defect produced by the debridement was
left open.

Fithian
was hospitalized until February 28, 2006.  She was readmitted to Methodist
Hospital on March 31, 2006, complaining of  abdominal pain with nausea and
vomiting.  After her intra-abdominal abscess was drained, she was discharged on
April 11, 2006. Following discharge from the hospital, Fithian received home
care from visiting nurses.








Fithian
filed suit against Dr. Marvin, claiming that his negligence caused her actual
damages including medical bills, physical disability, physical impairment,
disfigurement, lost wages, lost earning capacity, physical pain, and mental
anguish.  Pursuant to section 74.351 of the Civil Practice and Remedies Code,
Fithian timely served Dr. Martin=s expert report. According to Dr.
Martin, Dr. Marvin breached the standard of care by failing to timely conduct a
physical exam after Fithian presented with evidence of a post-operative
infection. 

Dr.
Marvin filed a motion to dismiss, arguing that Dr. Martin=s expert report was not sufficient to
fulfill the requirements of section 74.351.  The trial court sustained Dr.
Marvin=s objections, but granted Fithian a
thirty-day extension to produce another report.  Fithian served Dr. Martin=s second report on September 24,
2007.  Dr. Marvin filed a second motion to dismiss, which the trial court
denied.  This interlocutory appeal followed.

II. Analysis

In two
issues, Dr. Marvin contends the trial court abused its discretion by denying
his motion to dismiss because Dr. Martin=s expert opinions are conclusory. 
Specifically, Dr. Marvin contends Dr. Martin=s opinion on causation is without
factual support and his opinions on the standard of care are based on
unsupported assumptions that are contradicted by the evidence.

We
review a trial court=s ruling regarding the adequacy of an expert report for abuse
of discretion.  Am. Transitional Care Ctrs. of Tex. Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001).  A trial court commits an abuse of discretion if
it acts in an arbitrary or unreasonable manner without reference to guiding
rules or principles.  See Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).  We
may not substitute our judgment for that of the trial court when reviewing
matters committed to the trial court=s discretion.  Walker v. Packer,
827 S.W.2d 833, 839B40 (Tex. 1992). 








Under
section 74.351 of the Civil Practice and Remedies Code, health care liability
claimants must provide an expert report to the defendant no later than 120 days
after filing the original petition.  See Tex. Civ. Prac & Rem. Code
Ann. ' 74.351(a) (Vernon Supp. 2005).  A
defendant may file a motion challenging the adequacy of the report, and the
trial court Ashall grant@ the motion only if it appears the report does not represent
a good faith effort to comply with the statutory definition of an expert
report.  See id. '' 74.351(a), 74.351(l).  In determining whether a claimant
made a good faith effort, the trial court=s inquiry is limited to the four
corners of the report, and no inferences may be drawn from information not
included in the report.  See Palacios, 46 S.W.3d at 878.  An expert
report is defined as a written report by an expert that provides a fair summary
of the expert=s opinions regarding: (1) the applicable standard of care; (2) the manner
in which the care provided failed to meet that standard; and (3) the causal
relationship between that failure and the injury, harm, or damages claimed.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6) (Vernon Supp. 2005); Palacios,
46 S.W.3d at 878B79.  In compliance with these standards, the claimant=s expert must incorporate enough
information to fulfill two purposes: (1) inform the defendant of the specific
conduct the plaintiff has called into question; and (2) provide a basis for the
trial court to conclude the claims are meritorious.  Palacios, 46 S.W.3d
at 879.

A report
that merely reflects the expert=s conclusions about the standard of care, breach, and
causation does not fulfill these purposes.  Id.  An expert must explain
the basis for his statements and link his conclusions to the facts.  Wright,
79 S.W.3d at 52.  However, a claimant need not present all the evidence
necessary to litigate the merits of her case.  Palacios, 46 S.W.3d at
879.  The report may be informal, and it is unnecessary for the claimant to
fulfill the requirements for evidence offered in a summary-judgment proceeding
or at trial.  Id.  Moreover, the expert is not required to express the
causal relationship in predicates amounting to Amagical@ words.  Wright, 79 S.W.3d at
53.

 

 








A.        Causation

Dr.
Marvin argues that the trial court abused its discretion by finding Dr. Martin=s report complies with section 74.351
because Dr. Martin=s causation opinions are conclusory.  Specifically, Dr.
Marvin contends (1) Dr. Martin=s opinion that failure to conduct a physical exam was Aassociated with@ Fithian=s damages is conclusory and
insufficient to provide a fair summary of facts supporting proximate cause; (2)
Dr. Martin failed to provide a sufficient factual basis to support the claim
that different treatment would have prevented Fithian=s damages; (3) Dr. Martin=s opinion that surgery to close the
hole in Fithian=s stomach could have been performed on February 3 required
the trial court to indulge an impermissible inference from outside the expert
report that the pin hole existed on February 3; (4) Dr. Martin failed to
provide a fair summary regarding the relevant causal facts because he did not
explain how different care from February 3B6 would have prevented Fithian=s damages when peritonitis and
infection were present prior to Dr. Marvin=s alleged negligence; and (5) Dr.
Martin failed to address a number of Fithian=s claims for damages.  However, we
determine that Dr. Martin=s expert report constituted a good faith effort in compliance
with section 74.351.








Dr.
Marvin first argues that Dr.  Martin did not adequately describe the factual basis
for his contention that different treatment would have prevented Fithian=s damages.  We disagree.  Dr. Martin
explained that surgery could have been performed prior to deterioration of
Fithian=s organs if the source of her
post-surgical infections had been discovered on February 3.  In the report, Dr.
Martin described a series of missed chances for an accurate diagnosis of the
cause of Fithian=s infections. Dr. Martin stated that Fithian would have been
timely diagnosed with peritonitis, and surgery would have been performed to
close the hole in her stomach if a qualified physician had performed a physical
exam on February 3.  Dr. Martin explained that surgery would have eliminated
the source of the Fithian=s peritonitis and Aalmost all of her subsequent
problems.@ Dr. Martin opined that Fithian would not have developed kidney failure
and pulmonary insufficiency if this course of action had been followed.  Dr.
Martin stated that each day Dr. Marvin missed an opportunity to intervene, 
more of Fithian=s tissues was destroyed by infection and her period of
disability was increased.  According to Dr. Martin, Fithian suffered from
life-threatening peritonitis, secondary pulmonary insufficiency, pleural
effusions with toxic cellular products, and secondary kidney failure because
she was not timely diagnosed and treated.  Accordingly, the trial court did not
abuse its discretion by finding Dr. Martin described facts and circumstances
sufficient to support his opinion that Dr. Marvin=s alleged negligence caused Fithian=s injuries.[8]

Dr.
Marvin further argues that Dr. Martin failed to describe facts sufficient to
support the assumptions and inferences drawn in his report.  Specifically, Dr.
Marvin contends Dr. Martin engaged in an impermissible inference that the pin
hole in Fithians=s stomach existed on February 3.  We disagree.  








Dr.
Martin infered that the pin hole in Fithian=s abdomen existed on February 3 based
on the fact that she exhibited signs of infection only three days after
undergoing laparoscopic gastric band surgery and the source of major infection
was ultimately determined to stem from that surgery.  We acknowledge that Dr.
Martin=s conclusion may have been based on
an inference, gleaned from medical records, that the source of Fithian=s peritonitis, present on February 7,
was the same source of her infection which was present on February 3. We acknowledge
that trial courts are prohibited from drawing inferences from outside the four
corners of an expert report; see Palacios, 46 S.W.3d at 878; however,
section 74.351 does not prohibit experts from making inferences based on
medical history.  See generally Tex. Civ. Prac. & Rem. Code Ann. ' 74.351.  Therefore, we conclude Dr.
Marvin=s contention lacks merit.

Additionally,
Dr. Marvin argues that Dr. Martin=s report is deficient because Dr.
Martin did not provide an opinion regarding the possible effect of the
peritonitis and other infection that may have existed prior to Dr. Marvin=s alleged failure to timely diagnose
and treat Fithian.  However, as stated above, an expert must inform the
defendant of the specific conduct the plaintiff has called into question and
provide a basis for the trial court to conclude the claims are meritorious; he
need not present all evidence necessary to litigate the merits of the plaintiff=s case or marshal all of the
plaintiff=s proof.  Palacios, 46 S.W.3d at 879.  This specific objection to
Dr. Martin=s report pertains to the measure of damages, not the question of whether
Dr. Martin sufficiently described the specific conduct Fithian has called into
question or whether the report provides a basis for the trial court to conclude
the claims have merit.  According to Dr. Martin, Fithian suffered an increase
in damages due to Dr. Marvin=s alleged breach of the standard of care.  Therefore, the
trial court could properly have found that Dr. Martin=s report was sufficient to inform Dr.
Marvin regarding the specific conduct called into question and afforded him the
opportunity to form an opinion regarding whether the claims had potential merit. 
We reach this conclusion despite Dr. Martin=s alleged failure to differentiate
between Fithian=s damages caused by a pre-existing condition and damages
stemming from Dr. Marvin=s alleged negligence. 








Finally,
Dr. Marvin contends the trial court abused its discretion by failing to dismiss
the claims not addressed in Dr. Martin=s report.  A trial court is warranted
in dismissing claims resulting from a defendant=s alleged breach of a standard of
care if those results are not addressed in the plaintiff=s expert report.  Farishta v.
Tenet Healthsystem Hosps. Dallas, Inc., 224 S.W.3d 448, 455 (Tex. App.CFort Worth 2007, no pet.).   In Farishta,
the plaintiff alleged that the defendant=s negligence was a proximate cause of
the plaintiff=s infection, related injuries, illness, developmental impairment, and
damages.  Id.  In a section 74.351 report, the plaintiff=s expert opined that the defendant=s alleged breach of the standard of
care caused respiratory distress, cyanosis, pneumonia, and other injuries
sustained at birth.  Id.  The expert did not address developmental
impairment, which the plaintiff had alleged in her petition.  Id.  The Farishta
court held that the trial court properly dismissed the plaintiff=s claims related to developmental
impairment and illness other than those specifically enumerated in the report
because the expert failed to provide a fair summary regarding the causal link
between those damages and the defendant=s breach of the standard of care.  Id.


Here,
Dr. Marvin contends that Dr. Martin failed to address the following claims:
damages not caused by kidney failure, pulmonary insufficiency, or lack of
abdominal muscle, fat, or skin; future medical expenses; future disability;
future impairment; future lost earning capacity; and future pain and mental
anguish.  However, Dr. Martin opined that all of Fithian=s damages stemmed from the
undiagnosed peritonitis, which led to kidney failure, pulmonary insufficiency,
and the necessary debridement of abdominal muscle, fat, and skin. We cannot
conclude the trial court abused its discretion by declining to dismiss the
cited claims.  

In sum,
the trial court acted within its discretion by finding Dr. Martin=s opinions regarding causation and
damages were not conclusory.  Accordingly, we overrule Dr. Marvin=s first issue.

B.        Standard
of Care and Alleged Breach 








Second,
we will address Dr. Marvin=s contentions regarding the adequacy of Dr. Martin=s report relative to the standard of
care.   In his report, Dr. Martin set forth the applicable standard of care: A[upon receiving data indicating an
infection the] standard of care required the surgeon to have a qualified
physician perform a physical exam on the patient to determine potential sources
of infection, both obvious and more subtle.@  Dr. Marvin does not dispute Dr.
Martin=s description of the applicable
standard of care; however, he contends Dr. Martin failed to sufficiently link
the standard of care to circumstances presented in this case.  Dr. Marvin
acknowledges that under the standard of care, an examination by a qualified
physician is required upon discovery of post-operative infection; however, he
argues that Dr. Martin failed to adequately describe facts and circumstances
necessitating such a physical exam.

Dr.
Martin=s report states ADr. Marvin departed from the standard
of care by not initiating direct physician contact with his patient on February
3, 2006, the day he received irrefutable evidence that she had an unanticipated
and potentially life-threatening post-operative infection.@  In support of this conclusion, Dr.
Martin referenced symptoms indicating Fithian suffered from a post-surgical
infection on February 3, including Fithian=s February 2 reports of generalized
pain, mild shortness of breath, and fever of 101.3°-101.8°F, as well as the February 2 CAT scan and chest x-ray
showing infiltrated lungs and atelectasis.  Accordingly, we conclude Dr. Martin
provided sufficient facts to support Fithian=s claim that Dr. Marvin breached the
standard of care regarding initiating contact and performing a physical
examination.








However,
Dr. Marvin further argues that the facts recited in Dr. Martin=s report contradict Dr. Martin=s conclusion that, under the standard
of care, Dr. Marvin should have arranged for a qualified physician to conduct a
physical examination.  Dr. Marvin contends that Dr. Martin demonstrated only
that, on February 2, Fithian was experiencing an infection in her lungs and
there are no facts indicating when peritonitis formed.[9] 
Additionally, he notes Dr. Martin did not describe circumstances such as a CAT
scan reflecting abnormalities in Fithian=s abdomen or how an infection in her
lungs could spread without detection by the CAT scan.  Dr. Marvin contends the
trial  court  must have made an impermissible inference from information
outside  Dr. Martin=s expert report by concluding that Fithian suffered from
peritonitis on February 2.

However,
according to Dr. Martin, under the applicable standard of care, after observing
evidence of post-operative infection, a qualified physician is required to
conduct a physical examination to determine the potential source of the
infection.  On February 2, Fithian=s oral reports regarding her physical
symptoms, her elevated white blood cell count, as well as the CAT scan and
chest x-ray showing infiltrated lungs, atelectasis, and probable small pleural
effusions, indicated she was experiencing post-operative infection. 
Additionally, Dr. Martin noted that an intra-abdominal infection may escape
from abdominal lining and attack extra-abdominal tissues.  Pursuant to the
standard of care, when Fithian presented with evidence of an infection, Dr.
Marvin, or another qualified physician, should have performed a physical exam. 
Dr. Martin opines that Dr. Marvin failed to comply with the applicable standard
of care by neglecting to perform a physical exam.

 After
reviewing Dr. Martin=s expert report, we conclude the trial court acted within its
discretion by concluding that Dr. Martin provided a fair summary of the
applicable standard of care and sufficiently described the factual basis for
his opinion that Dr. Marvin breached that standard.  We overrule Dr. Marvin=s second issue.

The
trial court=s order denying Dr. Marvin=s motion to dismiss is affirmed.

                                                                              

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed July 1, 2008.

Panel consists of Justices Fowler,
Frost, and Seymore.









[1]  Fithian originally sued Dr. Marvin and Houston
Community Hospital, Inc. d/b/a Renaissance Hospital, Inc.  Subsequently, she
non-suited her claims against Renaissance Hospital, Inc.





[2]  The medical history outlined in this opinion is
taken from Dr. Martin=s report. We restate these facts solely to provide a
background for disposition of this interlocutory appeal and for no other
purpose.





[3]  The collapse of all or part of a lung.





[4]  Excess fluid in the body cavity surrounding the
lungs.





[5]  A condition in which tissue becomes firm and solid
rather than elastic due to the accumulation of fluids and tissue debris.





[6]  An infection of the abdominal cavity.





[7]  The removal of dead, damaged, and infected tissue.





[8]  Although his brief is somewhat unclear, Dr. Marvin
seems to contend Dr. Martin=s report was
deficient because he failed to adequately explain the surgical procedures
required to alleviate Fithian=s infection. 
We disagree.  Presumably, Dr. Marvin contends that an expert, opining that a
patient needs surgery to cure infection, lacks a factual basis for that opinion
if he fails to describe the procedures for addressing the source of infection
and state how the surgeon would treat any infection present at the time of the
surgery.  However, the source of Fithian=s
peritonitis was adequately described, and we do not agree that the statute
requires Dr. Martin to detail the type of surgical procedures calculated to
resolve all of Fithian=s physical injuries.





[9]  Although Dr. Marvin raises this specific argument in
the Acausation@
section of his brief, we address it here because this argument concerns the
adequacy of the report regarding the alleged breach of the standard of care.