Opinion issued October 29, 2009











In The
Court of Appeals
For The
First District of Texas




NO. 01-09-00551-CV




TUAN A. VU, M.D., INDIVIDUALLY AND D/B/A SOUTHWEST
COSMETIC SURGERY AND SKIN CARE CENTER AND TUAN A. VU,
M.D., P.A., Appellants

V.

CICELY SOLANIC, Appellee




On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 08-DCV-167499




MEMORANDUM OPINION
          The issue in this interlocutory appeal is whether the trial court abused its
discretion by denying a motion to dismiss health-care-liability claims. Appellants
Tuan A. Vu, M.D., individually and d/b/a Southwest Cosmetic Surgery and Skin Care
Center and Tuan A. Vu, M.D., P.A. moved to dismiss appellee Cicely Solanic’s
medical-malpractice claims on the ground that Solanic filed a deficient expert report. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (l) (Vernon Supp. 2009). The
trial court denied the motion to dismiss. We affirm the order in part and reverse in
part.
Background
          For the purposes of reviewing the sufficiency of the expert report, the relevant
facts as stated in the amended report are that in May 2007 Dr. Vu performed both an
abdominoplasty (tummy tuck) and lipsosuction on the patient, Cicely Solanic. 
Approximately nine months after the surgery, Solanic went to see another physician,
Eugenio Fred Aguilar, III, M.D. Dr. Aguilar stated that he observed the following:
Within a week following the surgery, the abdominoplasty had
split open at the level of the base of the abdomen. The wound healed
slowly leaving a very large and unsightly scar. My examination also
revealed significant scarring measuring approximately 10cm in the mid
portion of the abdomen. There was also a large amount of banding and
adhesions (scar tissue) to the underlying fascia. There is some
irregularity of the fat lining the anterior abdominal wall as well as some
amount of unevenness along the flanks. My physical examination also
revealed an umbilical hernia which alters and distorts the appearance of
her belly button . These complications, in my opinion, necessitate
redoing the entire abdominoplasty as soon as possible.
 
The records from Memorial Hermann Hospital - Sugarland
indicate that on May 26, 2007, ten days after her abdominoplasty and
liposuction, she was admitted to the emergency room with an abdominal
wound dehiscence which was draining with eschar development inside
the open incision, and abdominal blisters caused by dead and/or
dying/necrotic tissue. She was treated with antibiotics for infection and
Vicodin for pain.
          In October 2008, Solanic filed suit against Dr. Vu and his professional
corporation


 in which she alleged Dr. Vu was negligent as follows:
(a)Failing to plicate or correct the diastatis recti in the upper part of
[Solanic’s] abdomen.
(b)Failing to perform the liposuction and tummy tuck in accordance
with established standards of care.
(c)Failing to provide [Solanic] with a sufficient amount of truthful
and accurate information regarding [Dr. Vu’s] competence,
training and experience to perform the procedures in question to
enable [Solanic] to make an informed and intelligent decision
regarding the procedures and the propriety of allowing [Dr. Vu]
to perform the procedure.
(d)Failing to provide [Solanic] with a sufficient
amount of truthful and accurate information
regarding safer and reasonable available
alternatives to the operative plan
recommended and performed by [Dr. Vu].
(e)Failing to provide [Solanic] with a sufficient amount of truthful
and accurate information about the foreseeable risks and hazards
of the procedure to have enabled [Solanic] to give her informed
consent to the procedure performed by [Dr. Vu].
At the time she filed her original petition, Solanic filed the original expert report and
curriculum vitae from Dr. Aguilar.
          Dr. Vu filed an objection to the expert report, which the trial court sustained
on the basis that the report inadequately set forth the standard of care and causation. 
The trial court granted a 30-day extension of time for Solanic to file an amended
expert report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp.
2009).
          Solanic timely filed the amended expert report and curriculum vitae from Dr.
Aguilar. The substance of the amended report follows:
It is my opinion, based on my examination of the patient, review
of her medical records, and my training and experience, that the
patient’s blisters, wound dehiscence, and the resulting excessive
scarring were caused by a reduction in the patient’s blood supply
coming from her upper abdomen to the most distal part of the abdominal
flap. This reduction in blood supply caused the tissue damage and/or
delayed the healing process so significantly that the patient’s blistering,
tissue necrosis, and wound dehiscence were able to develop. These
complications were a foreseeable result of Dr. Vu performing both the
tummy tuck and liposuction at the same time, which was a departure
from the applicable standard of care. In order to have complied with the
standard of care, Dr. Vu should have staged the two surgical procedures
by doing the abdominoplasty first and the liposuction two to three
months later. Staging the surgeries would have placed less demand on
the patient’s blood supply and averted the reduced abdominal blood
supply which cause these complications to develop.
 
It is also my opinion that Dr. Vu also breached the standard of
care by failing to inform the patient about the foreseeable risk of
blistering and/or healing complications that were more likely if the
abdominoplasty and liposuction were done at the same time. In order to
have complied with this standard of care, Dr. Vu should have so
informed the patient and recommended that the procedures be staged at
least two to three months apart.
 
It is my opinion, based on my review of the relevant medical
records, my examination of the patient, and my training and experience
in treating many patients under similar circumstances, that Ms. Solanic’s
abdominal blisters, tissue necrosis, wound dehiscence, and excessive
scarring was in reasonable medical probability, caused by the reduction
and/or compromise in the patient’s blood supply to the affected
abdominal tissue. It is a well known medical fact that reduced blood
results in slower and less effective healing and the consequent
development of more scar tissue. Had the standard of care been
complied with, it is unlikely, i.e., not reasonably probable, that these
complications and the resultant scarring, disfigurement, and subsequent
hospitalization to treat these complications would have occurred.
The amended report did not discuss Dr. Vu’s alleged failure to plicate or correct the
diastatis recti in the upper part of Solanic’s abdomen. This was, however, discussed
in the original report:
Dr. Vu failed to meet the standard of care by not correcting the
diastasis recti in the upper portion of the abdomen. He should have
plicated the diastasis recti in the upper portion of the abdomen. This
violation of the standard of care caused the patient to develop apparent
hernia in the upper left center of the abdomen.
          Dr. Vu objected to the expert reports on the following grounds:
          •        Informed consent—Not discussed in the original or amended expert
report
 
          •        Diastasis recti correction—Not mentioned in the amended expert report,
but the original report omits (1) the standard of care and (2) expresses
a conclusory opinion on whether Dr. Vu breached the standard of care
 
          •        Liposuction and tummy tuck—The original and amended reports (1)
omit the standard of care and (2) inadequately express an opinion on
proximate cause
The trial court overruled the objections to the amended expert report, and Dr. Vu
appealed.
Discussion
          Dr. Vu’s single issue on appeal is that the trial court abused its discretion in
denying the motion to dismiss because Solanic did not file an expert report that was
an objective, good-faith effort to comply with Civil Practice and Remedies Code
section 74.351(r)(6) and American Transitional Care Centers., Inc. v. Palacios. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2009) (stating “court
shall grant a motion challenging the adequacy of an expert report only if it appears
to the court, after hearing, that the report does not represent an objective good faith
effort to comply with the definition of an expert report in Subsection (r)(6).”); id.
§ 74.351(r)(6) (Vernon Supp. 2009) (requiring “a fair summary of the expert’s
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider failed to
meet the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed”); Palacios, 46 S.W.3d 873, 877 (Tex. 2001).
          The only information relevant to our inquiry is that found within the four
corners of the report. Palacios, 46 S.W.3d at 878. A report need not marshal all of
the plaintiff’s proof, but it must include the expert’s opinion on each of the elements
identified in the statute. Id. In setting out the expert’s opinions on each of those
elements, the report must provide enough information to fulfill two purposes to
constitute a good-faith effort. Id. at 879. First, the report must inform the defendant
of the specific conduct that the plaintiff has called into question. Id. Second, and
equally important, the report must provide a basis for the trial court to conclude that
the claims have merit. Id.
          Dr. Vu specifically challenged the sufficiency of the expert reports for
Solvanic’s negligence claims regarding informed consent, surgical errors, and the
vicarious liability of Dr. Vu’s alleged negligence. We review a trial court’s order
dismissing a claim for failure to comply with section 74.351(r)(6)’s expert-report
requirements under an abuse-of-discretion standard. Palacios, 46 S.W.3d at 878. A
trial court abuses its discretion if it acts in an arbitrary or unreasonable manner
without reference to any guiding rules or principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). When reviewing matters
committed to the trial court’s discretion, a court of appeals may not substitute its own
judgment for the trial court’s judgment. See Flores v. Fourth Ct. of Appeals, 777
S.W.2d 38, 41 (Tex. 1989).
1. Informed consent
          Dr. Vu first challenges the sufficiency of the expert reports regarding Solanic’s
informed-consent claim. In her appellee’s brief, Solanic concedes that both the
original and amended expert report are deficient regarding her claim that Dr. Vu did
not provide her sufficient information so she could give informed consent to the
procedure. Based on this admission, we hold the trial court erred in holding the
expert reports to be sufficient regarding the informed-consent claim.
2. Surgical errors
          Dr. Vu next challenges the sufficiency of the expert reports regarding the
negligence claims for (1) the diastasis recti correction and (2) the liposuction and
tummy tuck. An expert report must incorporate sufficient information to (1) inform
the defendant of the specific conduct the plaintiff has called into question and (2)
provide a basis for the trial court to conclude the claims are meritorious. Palacios,
46 S.W.3d at 879. A report cannot merely state the expert’s conclusions about these
elements. Id. The expert must explain the basis for his statements and must link his
conclusions to the facts. Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex.
2002). However, to avoid dismissal, a plaintiff need not present all the evidence
necessary to litigate the merits of his case. Palacios, 46 S.W.3d at 879. The report
may be informal in that the information need not fulfill the same requirements as the
evidence offered in a summary judgment proceeding or at trial. Id.
          a. No clear and direct statement of the standard of care
          Dr. Vu contends that the two expert reports do not discuss the standard of care
for the two procedures. We disagree.
          The original report gives the standard of care for the diastasis-recti-correction
claim: “Dr. Vu failed to meet the standard of care by not correcting the diastasis recti
in the upper portion of the abdomen. He should have plicated the diastasis recti in the
upper portion of the abdomen.” The amended report gives a standard of care for the
liposuction-and-tummy-tuck claim:
It is my opinion, based on my examination of the patient, review of her
medical records, and my training and experience, that the patient’s
blisters, wound dehiscence, and the resulting excessive scarring were
caused by a reduction in the patient’s blood supply coming from her
upper abdomen to the most distal part of the abdominal flap. This
reduction in blood supply caused the tissue damage and/or delayed the
healing process so significantly that the patient’s blistering, tissue
necrosis, and wound dehiscence were able to develop. These
complications were a foreseeable result of Dr. Vu performing both the
tummy tuck and liposuction at the same time, which was a departure
from the applicable standard of care. In order to have complied with
the standard of care, Dr. Vu should have staged the two surgical
procedures by doing the abdominoplasty first and the liposuction two
to three months later. Staging the surgeries would have placed less
demand on the patient’s blood supply and averted the reduced
abdominal blood supply which cause these complications to develop.
(Emphasis added.)
          The reports inform Dr. Vu of the specific conduct that the Solanic has called
into question. While Dr. Vu can argue later in the proceedings whether the standard
of care described by Dr. Aguilar is correct, the trial court did not abuse its discretion
in holding the initial expert reports to be sufficient in this regard.
          b. No proximate cause
          Dr. Vu next contends that the two expert reports do not discuss the proximate
cause required in an expert report, i.e., the causal relationship between the physician’s
failure and the injury, harm, or damages claimed. In the diastasis-recti-correction
claim, we agree that the causation analysis is wholly conclusory. The expert report
states:
Dr. Vu failed to meet the standard of care by not correcting the
diastasis recti in the upper portion of the abdomen. He should have
plicated the diastasis recti in the upper portion of the abdomen. This
violation of the standard of care caused the patient to develop an
apparent hernia in the upper left center of the abdomen.
The causation analysis provides no basis for the trial court to conclude the
diastasis-recti-correction claim is meritorious and is therefore insufficient. See
Palacios, 46 S.W.3d at 879.
          We disagree, however, regarding the alleged insufficiency of the
liposuction-and-tummy-tuck claim. For this claim, the amended expert report’s
causation analysis states:
. . . This reduction in blood supply caused the tissue damage
and/or delayed the healing process so significantly that the patient’s
blistering, tissue necrosis, and wound dehiscence were able to develop.
. . . Staging the surgeries would have placed less demand on the
patient’s blood supply and averted the reduced abdominal blood supply
which cause these complications to develop.
. . .
It is my opinion, based on my review of the relevant medical
records, my examination of the patient, and my training and experience
in treating many patients under similar circumstances, that Ms. Solanic’s
abdominal blisters, tissue necrosis, wound dehiscence, and excessive
scarring was in reasonable medical probability, caused by the reduction
and/or compromise in the patient’s blood supply to the affected
abdominal tissue. It is a well known medical fact that reduced blood
results in slower and less effective healing and the consequent
development of more scar tissue. Had the standard of care been
complied with, it is unlikely, i.e., not reasonably probable, that these
complications and the resultant scarring, disfigurement, and subsequent
hospitalization to treat these complications would have occurred.
Whether Dr. Aguilar’s expert opinion is ultimately persuasive to the fact-finder is
another matter. But for the purpose of the expert report, Dr. Aguilar has provided a
causal basis for the trial court to conclude that the liposuction-and-tummy-tuck claim
has merit.
          Accordingly, the trial court erred in holding the expert reports to be sufficient
to show causation for the diastasis-recti-correction claim. The trial court did not err
in holding the expert reports to be sufficient to show causation for the
liposuction-and-tummy-tuck claim.
 
3. Vicarious liability
          Dr. Vu finally claims the expert reports are insufficient concerning the
vicarious responsibility claims against his professional corporation. To the extent we
have already concluded the expert reports are insufficient regarding Dr. Vu, we agree
the reports are also insufficient regarding his professional corporation. See Gardner
v. U.S. Imaging, Inc., 274 S.W.3d 669, 671–72 (Tex. 2008) (“When a party’s alleged
health care liability is purely vicarious, a report that adequately implicates the actions
of that party’s agents or employees is sufficient.”).
Conclusion
          We hold the trial court did not err by denying Dr. Vu’s motion to dismiss on
the basis of Solanic’s liposuction-and-tummy-tuck claim. We therefore affirm that
portion of the trial court’s order. We hold the trial court erred by denying Dr. Vu’s
motion to dismiss on the basis of Solanic’s informed-consent and
diastasis-recti-correction claims. We therefore reverse that portion of the trial court’s
order.

 


                                                             Michael Massengale
                                                             Justice

Panel consists of Chief Justice Radack and Justices Bland and Massengale.