In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00597-CV
_____

INTRA-OP MONITORING SERVICES, LLC AND
JUSTIN HAWKINS, Appellants

V.

RACHEL CAUSEY AND BILL CAUSEY, Appellees

On Appeal from the 410th District Court
Montgomery County, Texas
Trial Cause No. 10-06-06191 CV

## MEMORANDUM OPINION

Intra-Op Monitoring Services, LLC ("Intra-Op") and Justin Hawkins appeal the trial court's order denying their motion to dismiss the Causeys' health care liability claims pursuant to section 74.351 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). Because the supplemental expert report was sufficient for the trial court to find it met the requirements of section 74.351, we affirm the order of the trial court.

1

## I.     BACKGROUND

In May 2009, Dr. Rosalia Burke performed a right superficial parotidectomy[1] on Rachel Causey at Memorial Hermann Hospital–The Woodlands. To assist in locating Rachel's facial nerve, Dr. Burke utilized intraoperative neurophysiological monitoring (IONM). Intra-Op provided the IONM equipment. The IONM equipment allows real-time mapping of areas with nerve branches by the placement of monitoring electrodes (which provide electroconductive feedback) on a patient's cranial nerves so the surgeon may avoid damaging the nerves during surgery. Intra-Op also provided the technologist, Justin Hawkins, who was present during the surgery.  Dr. Charles Popeney, a neurologist specializing in intraoperative neurophysiological monitoring, assisted Dr. Burke by monitoring the readings from the IONM equipment, from a remote location.  During the procedure, Rachel's facial nerve was inadvertently transected.

The Causeys filed a report authored by Dr. Jaime Lopez to comply with the statutory requirements that apply to health care liability claims.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.  Intra-Op and Hawkins filed objections to the sufficiency of the expert report.  The trial court overruled the objections and denied

---

[1] A parotidectomy is the "surgical removal of the parotid gland[.]" *Webster's Third New International Dictionary* 1644 (2002).  The parotid gland is "either of a pair of salivary glands situated on the side of the face below and in front of the ear[.]" *Id*.

the parties' motion to dismiss. Intra-Op and Hawkins appealed the trial court's ruling. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2012). In the prior appeal, we concluded that Dr. Lopez's report failed to provide a fair summary that explained how the acts or omissions of Intra-Op and Hawkins proximately caused Rachel's injury. *See Intra-Op Monitoring Servs., LLC v. Causey*, No. 09-12-00050-CV, 2012 WL 2849281, at *1 (Tex. App.—Beaumont July 12, 2012, no pet.) (mem. op.). We reversed the trial court's order and remanded the case to the trial court to consider the Causeys' request for additional time to cure the deficiencies. *Id*. at *5.

The trial court subsequently granted Intra-Op's and Hawkins's request for an extension of time and Dr. Lopez filed a supplemental report. Intra-Op and Hawkins objected to the sufficiency of the supplemental report and moved to dismiss. The trial court overruled the objections and denied the motion to dismiss. This interlocutory appeal followed. On appeal, Intra-Op and Hawkins argue that Dr. Lopez's supplemental report still fails to explain how the alleged acts or omissions of Intra-Op and Hawkins caused Rachel's injuries and fails to adequately address the standard of care and breach of the standard of care. Finding no abuse of discretion by the trial court in denying the motion to dismiss, we affirm the order of the trial court.

3

## II.    APPLICABLE LAW

We review a trial court's denial of a motion to dismiss under section 74.351 of the Civil Practice and Remedies Code for an abuse of discretion.  *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001).  "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles."  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  A trial court also abuses its discretion if it fails to analyze or apply the law correctly.  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A plaintiff who asserts a health care liability claim, as defined by the statute, must provide each defendant physician or health care provider with an expert report which provides "a fair summary of the expert's opinions" as of the date of the report regarding the applicable standards of care, the manner in which the care rendered failed to meet the applicable standards, and the causal relationship between that failure and the claimed injury. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6).  When a plaintiff timely files an expert report and a defendant moves to dismiss on the basis that the report is insufficient, the trial court must grant the motion only if the report does not represent a good faith effort to meet the statutory requirements.  *Id*. § 74.351(*l*).  To constitute a good faith effort, a report

4

"must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875.

"A report cannot merely state the expert's conclusions about these elements[]" but "'must explain the basis of [the] statements to link [the] conclusions to the facts.'" *Bowie*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)); *see also Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010). A report that merely states the expert's conclusions about the standard of care, breach, and causation is deficient. *Palacios*, 46 S.W.3d at 879. Further, a report that omits any of the statutory elements is likewise deficient. *Id.* Regarding claims of vicarious liability, an expert report is sufficient when it "adequately implicates the actions of that party's agents or employees[.]" *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008). "The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Palacios*, 46 S.W.3d at 879.

## III.    ANALYSIS

In our prior opinion, we concluded that Dr. Lopez's initial report was insufficient because we were unable to determine from the report which of the defendants failed to properly interpret the monitoring data, what monitoring data was not properly interpreted, what the standards of care applicable to a technologist such as Hawkins required, at what point during the surgery the facial nerve was cut, and what information should have been provided to Dr. Burke that would have allowed her to avoid cutting the facial nerve. *Intra-Op*, 2012 WL 2849281, at *3. Dr. Lopez's supplemental report answers these questions and provides a fair summary of the standards of care, breach, and causation. *See Palacios*, 46 S.W.3d at 875.

In his supplemental report, Dr. Lopez extensively sets out the standards of care applicable to Hawkins, including, but not limited to, a duty to "properly and competently place invasive intramuscular recording electrodes in the correct facial nerve innervated muscles, corresponding to the nerve at risk for injury and those muscles used as controls[;]" "monitoring continuous and electrically stimulated electromyographic activity from the facial innervated muscles and a non-facial innervated muscle for control purposes[;]" "[r]eviewing the baseline IONM data with Dr. Popeney prior to the first incision of the case[;]" "[r]eviewing the IONM

6

data obtained prior to the critical portion of the surgery[;]" "[r]eviewing and confirming the IONM dynamic data results, in real-time, as it was obtained with Dr. Popeney . . . in a contemporaneous manner[;]" "[t]o promptly inform the surgeon of any IONM testing results and/or changes after reviewing the data with Dr. Popeney[;]" and to "not independently interpret the IONM data, . . . [because] [t]his must be done by the supervising IONM physician, in this case, Dr. Popeney."

To evidence a breach of the standard of care, Dr. Lopez relied upon the events of the surgery, Dr. Burke's post-operative report, Dr. Burke's affidavit, and a communications log and chat log that recorded communications between Hawkins and Dr. Popeney during the surgery. In his supplemental report, Dr. Lopez states that surgery began at 1:25 p.m. but Dr. Popeney did not begin monitoring until 2:18 p.m., leaving Hawkins "unsupervised at the start of the case" and indicating that Dr. Popeney did not review any of the baseline IONM data at the start of the case. Dr. Lopez specifically asserts that Hawkins breached the applicable standards of care because he failed to monitor non-facial innervated control muscles. Dr. Lopez explains that "[h]aving a control muscle innervated by a different nerve helps to determine if the muscle activity seen is due to electrical artifact, a generalized process, or if it is specifically a result of activity from the nerve in question[.]" Dr. Lopez further asserts that Hawkins breached the standards

7

of care by failing to review the baseline IONM data with Dr. Popeney, or any other IONM physician, failing to review the IONM data obtained prior to the critical portion of the surgery, failing to review the IONM data contemporaneously with Dr. Popeney, and independently and improperly interpreting the IONM data.

Based on communications in the chat log, Dr. Lopez asserts in his supplemental report that Hawkins was "not in communication" with Dr. Popeney from 2:36 p.m. to 3:15 p.m., the period during the surgery that Dr. Burke was stimulating structures in an attempt to verify the nerve position. Dr. Lopez states that Hawkins breached the standard of care by failing to inform Dr. Burke that the IONM data had not been reviewed by the supervising IONM physician. Dr. Lopez reports that prior to cutting the facial nerve, Dr. Burke stimulated to verify the nerve position and the IONM data "'showed stimulation of all branches of the facial nerve.'" Dr. Lopez explains that the IONM screenshot at 2:44 p.m. "of the electrically triggered EMG response shows an electrical shock artifact but no true EMG (muscle) response." Dr. Lopez states:

> This would indicate that the facial nerve was not being electrically activated. Instead, by being told [by Hawkins] there was activity *"on Oculi, oris, and Mandibular"* . . . Dr. Burke was led to believe that the structure she was stimulating was indeed the facial nerve. This is of crucial importance because if she thought the structure she stimulated was the facial nerve, then she would assume the other structures encountered were not the facial nerve and treat them differently. This erroneous and false identification of the facial nerve, within

8

reasonable medical probability, contributed to the transection of the facial nerve, since the IONM nerve stimulation results conveyed to Dr. Burke indicated she had identified the facial nerve and, thus, the other structures in the surgical field could be treated as non-nerve[.]

Dr. Lopez concluded that Hawkins should have informed Dr. Burke that he had not confirmed any of the electrical stimulation findings with Dr. Popeney, and that he was unable to interpret the data, or confirm that the structure stimulated was the facial nerve. Dr. Lopez opined that "[d]oing this would have alerted Dr. Burke of the uncertainty of the situation regarding facial nerve identification and would have given her the opportunity to wait for Dr. Popeney to review the IONM data and then stimulate other structures" to correctly identify the facial nerve.

Dr. Lopez sets forth in his supplemental report the applicable standards of care and how they were allegedly breached by Hawkins. Dr. Lopez's explanation of how and why Hawkins's breach of the standards of care may have caused or contributed to Dr. Burke inadvertently cutting the facial nerve provides a sufficient basis for the trial court to determine that the claim has merit. *See Jelinek*, 328 S.W.3d at 539-40; *Palacios*, 46 S.W.3d at 879. We conclude the trial court did not abuse its discretion in denying Intra-Op's and Hawkins's motion to dismiss. We affirm the order of the trial court.

9

AFFIRMED.

                                  _____

                                      CHARLES KREGER
                                           Justice

Submitted on March 12, 2013
Opinion Delivered April 25, 2013

Before Gaultney, Kreger, and Horton, JJ.