**Opinion issued October 30, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00291-CV

_____

**METHODIST HEALTH CENTERS D/B/A HOUSTON METHODIST SUGAR LAND HOSPITAL, Appellant**

**V.**

**PATTY CRAWFORD AND HARRY SMITH, INDIVIDUALLY AND AS HEIRS OF JEANETTE SMITH, Appellees**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 13-DCV-208281**

---

## MEMORANDUM OPINION

Patty Crawford and Harry Smith sued Methodist Health Centers for medical malpractice in connection with its care for Jeanette Smith, their mother. Methodist moved to dismiss the suit on the ground that Crawford and Smith's medical expert

report was inadequate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West Supp. 2014). The trial court denied the motion. Methodist appeals, contending that the report fails to affirmatively demonstrate the expert's familiarity with the applicable standard of care. Finding no error, we affirm.

## Background

In September 2012, the Rosenberg Skilled Nursing Facility admitted Jeanette Smith, an eighty–three–year–old woman with a history of dementia and diabetes.[1] Smith had a pressure ulcer on her sacrum and required a feeding tube. About a month later, Rosenberg transferred Smith to Houston Methodist Sugar Land Hospital for treatment of a urinary tract infection and vomiting. At that point, Smith had developed an additional pressure ulcer on her right hip. By a few days later, the pressure ulcers had worsened. In late November, Methodist discharged Smith back to the Rosenberg facility.

In March 2013, the Rosenberg facility transferred Smith back to Methodist, due to her complaints of vomiting, fever, and shortness of breath. Smith also suffered from sepsis secondary to the infected sacral pressure ulcer, pneumonia, malnutrition, a urinary tract infection, and seven other severe pressure ulcers. Despite aggressive wound care treatment and antibiotic therapy, Smith's condition

---

[1] For purposes of our review of the adequacy of a medical expert report under Chapter 74, we take the allegations in the report as true. *Marino v. Wilkins*, 393 S.W.3d 318, 320 n.1 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

2

deteriorated. Four days after her admission, she died of respiratory failure, pneumonia, and infection.

*Course of proceedings*

Crawford and Smith sued Methodist and Rosenberg, individually and as the heirs of Jeanette Smith. Crawford and Smith attached Christopher Davey, M.D.'s expert report and curriculum vitae to the petition, pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code, and later proffered an amended report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The Smith family and the Rosenberg facility settled their dispute. Methodist then moved to dismiss the case against it for failure to serve an adequate Chapter 74 expert report.

**Discussion**

*Standard of review*

We review the trial court's ruling for an abuse of discretion. *Bowie Mem'l. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001)). A court abuses its discretion if it acts without reference to any guiding rules or principles. *Wright*, 79 S.W.3d at 52 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). When reviewing matters committed to the trial court's discretion, we may not substitute our judgment for the trial court's judgment. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003) (citing

3

*Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989)).  Our analysis of an expert's qualifications is limited to the four corners of the expert's report and curriculum vitae.  *Palacios*, 46 S.W.3d at 878.

*Analysis*

In a health care liability claim, a plaintiff must serve a defendant with an expert report, along with the curriculum vitae of each expert listed in the report, no later than 120 days after the defendant files its answer.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).  A person is qualified to opine whether the health care provider departed from the accepted standard of care if the person (1) practices health care in the same field as the health care provider; (2) knows the accepted standard of care for the health care provider; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding that standard of care. *Id.* § 74.402(b).

If a physician fails to state in his expert report that he has knowledge of the standard of care applicable to the specific type of health care provider defending against the claim, the physician is not qualified to opine whether the health care provider departed from the accepted standard of care.  *Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 558 (Tex. App.—Dallas 2009, no pet.).  To overcome a defendant's motion to dismiss, the physician–expert must affirmatively demonstrate experience and familiarity with that standard of care in

4

the Chapter 74 report. *Tawa v. Gentry*, No. 01-12-00407-CV, 2013 WL 1694869, at \*13 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.); *see also Simonson v. Keppard*, 225 S.W.3d 868, 873 (Tex. App.—Dallas 2007, no pet.) (holding that physician was not qualified to opine on standard of care for nurse practitioner because he failed to state that he had familiarity with standard of care for nurse practitioners).

This claim against Methodist involves standards of nursing care. A physician who is familiar with the appropriate standard of care for nurses for the prevention and treatment of the condition involved in the claim may opine as to whether a health care provider's nurses departed from the accepted standard of care. *Wallace*, 278 S.W.3d at 558; *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 814 (Tex. App.—Houston [14th Dist.] 2008), no pet.).

Dr. Davey meets the criteria for familiarity with the applicable standard of nursing care. In the report, he discusses his extensive training and education, particularly in the area of wound care. He is board certified as a wound specialist by the American Academy of Wound Management and serves as the medical director and active physician at Hyperbaric Medicine at the Edward White Center for Wound Care and Hyperbaric Medicine. He has also served as the medical director of ten nursing homes and holds admitting privileges at two hospitals. In his report, he states that he has practiced Geriatric Medicine in "office, hospital,

and nursing home settings." When Dr. Davey describes the standard of care applicable to Methodist, he refers only to the standard of care for nurses, as supported by the Board of Nurse Examiners and the Nurse Practice Act. In laying this groundwork, Dr. Davey demonstrates familiarity with the standard of care for nurses. *See Wright*, 79 S.W.3d at 52.

Relying on *Tawa v. Gentry*, Methodist contends that Dr. Davey's report does not demonstrate that he is familiar with the specific standard of care for its nurses. 2013 WL 1694869, at *13. *Tawa*, however, is distinguishable. There, a physician did not profess any knowledge about the standard of care for nurse practitioners and provided no basis for the trial court to conclude that he was familiar with such a standard other than stating that he was "familiar with the management of patients with medical conditions similar to [the patient's condition]." *Id.* at *14 (internal quotation omitted). In contrast, Dr. Davey states that he "understand[s] not just what the standard of care requires, but also what is likely to occur if the standard of care is not met." Coupled with the specific references to standards of nursing care in describing the conduct applicable to Methodist, the four corners of the report show familiarity with the applicable standard.

Methodist contends that Dr. Davey's report is nonetheless insufficient because it does not specifically address critically ill patients in a hospital setting, citing *Christus Spohn Health System Corp. v. Castro*, No. 13-13-00302-CV, 2013

6

WL 6576041, at *4 (Tex. App.—Corpus Christi Dec. 12, 2013, no pet.) (mem. op.). *Castro*, too, is distinguishable. In that case, a nurse and a physician were experts in the field of nursing home care, but not experts in the field of ICU/trauma care. *Id.* at *4. In contrast, in this case, the relevant field of practice is the treatment of pressure ulcers in a hospital setting. Dr. Davey has demonstrated extensive knowledge and experience in this field of practice. He is board certified as a wound specialist, has served on the Utilization Review and Quality Assurance Committee at HCA Edward White Hospital and Columbia Edward White Hospital and on the Medical Quality and Education Committee at St. Anthony's Hospital. In his curriculum vitae, he states that he is an active member of the medical staff at two hospitals. Contrary to Methodist's assertion, Dr. Davey's training and experience as set forth in the report extends beyond the nursing–home setting to the hospital setting. Accordingly, we hold that the trial court did not err in denying Methodist's motion to dismiss.

## Conclusion

Because Dr. Davey's report and curriculum vitae demonstrate that he is familiar with the applicable standard of care for nurses in a hospital setting, we hold that the trial court did not err in denying Methodist's motion to dismiss. Accordingly, we affirm the order of the trial court.


Jane Bland
Justice

Panel consists of Justices Higley, Bland, and Sharp.